DECISION
{¶ 1} Relator, William R. Sebring, Jr., commenced this original action requesting a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") *Page 2 
to vacate its order terminating temporary total disability compensation and to enter an order reinstating that compensation.
 {¶ 2} Pursuant to Civ. R. 53 and Section (M), Loc. R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate, in the decision rendered, found some evidence in the written memoranda in the record supporting the action taken by the commission and concluded that the commission did not abuse its discretion in any of the particulars claimed by relator. The magistrate recommended that relator's request for a writ of mandamus be denied.
 {¶ 3} Relator filed objections to the magistrate's decision, contending the magistrate's decision is not supported by law or evidence and reargues to this court the issues presented to and decided by the magistrate. For the reasons adequately stated in the decision of the magistrate, the objections are overruled.
 {¶ 4} Following independent review, pursuant to Civ. R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with that decision, the requested writ is denied.
Objections overruled, writ of mandamus denied.
PETREE and SADLER, JJ., concur.
T. BRYANT, J., retired of the Third Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 3 
 APPENDIX A MAGISTRATE'S DECISION Rendered April 29, 2008 IN MANDAMUS {¶ 5} In this original action, relator, William R. Sebring, Jr., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order terminating temporary total disability ("TTD") compensation effective September 8, 2006, and to enter an order reinstating TTD compensation. *Page 4 
Findings of Fact: {¶ 6} 1. On July 12, 2005, relator injured his lower back while employed as a warehouse worker for respondent Alro Steel Corporation ("Alro"), a state-fund employer. The warehouse where relator worked on the date of injury was located at Toledo, Ohio.
 {¶ 7} 2. The industrial claim was initially allowed for "sprain lumbosacral" and assigned claim number 05-365356.
 {¶ 8} 3. Following the date of injury, relator returned to light-duty restricted work during July and early August 2005. By mid-August 2005, relator had returned to full duty unrestricted work at the warehouse.
 {¶ 9} 4. On September 6, 2005, relator was laid-off.
 {¶ 10} 5. In October 2005, relator's wife accepted a job in Cheyenne, Wyoming. Consequently, relator moved his residence to Cheyenne. However, relator did not notify the Ohio Bureau of Workers' Compensation ("bureau") of his change of address until early May 2006.
 {¶ 11} 6. On January 9, 2006, by certified mail, return receipt requested, Alro sent a letter to relator's last known address at Elmore, Ohio. The letter informed that relator was being recalled from lay-off and that he was to contact Alro within three working days regarding his intention to return to work. The United States Postal Service returned the letter to Alro as "unclaimed."
 {¶ 12} 7. According to an Alro memorandum authored by Alro Plant Superintendent Jeff Guerra, on January 12, 2006, relator called Guerra and was informed about the letter. According to the memorandum, relator denied having received the letter and *Page 5 
informed Guerra that "he would not be coming back to work because he was going to file a workers comp injury in Wyoming."
 {¶ 13} 8. On March 6, 2006, relator moved for the allowance of additional conditions in his claim.
 {¶ 14} 9. Following a May 1, 2006 hearing, a district hearing officer ("DHO") issued an order additionally allowing the claim for "herniated nucleus pulposus at L5-S1 and L5-S1 radiculopathy," and awarding TTD compensation from November 20, 2005 through April 30, 2006, less any unemployment compensation received over the same period, and to continue upon submission of appropriate medical proof.
 {¶ 15} 10. Alro administratively appealed the DHO's order of May 1, 2006. Following a June 13, 2006 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order.
 {¶ 16} 11. On August 4, 2006, Judson H. Cook, M.D., who practices medicine at Cheyenne, Wyoming, issued return-to-work medical restrictions. Dr. Cook indicated that relator could return to modified work as of August 14, 2006 that was sedentary and required no lifting over 20 pounds. Other restrictions were also listed by Dr. Cook.
 {¶ 17} 12. On August 14, 2006, relator underwent an "L5-S1 interlaminar epidural steroid injection" performed by George Girardi, M.D., at Cheyenne, Wyoming.
 {¶ 18} 13. Also on August 14, 2006, at Alro's request, relator was examined by Michael Kaplan, M.D. In his report, Dr. Kaplan stated: "I am not convinced that he can return to his ironworker position, nor is this available to him given his move to Wyoming." *Page 6 
 {¶ 19} 14. Alro's Human Resources Director, Cheryl Watkins, authored a letter dated August 16, 2006 addressed to relator at his Cheyenne address. The August 16, 2006 letter states:
 As you are aware, your physician of record, Dr. Judson Cook, has released you to return to work with restrictions. A copy of the restricted work release has been attached for your review.
 At this time, no position is available with in your physician outlined temporary restrictions at your current employer. Per Company policy, it has been determined that you qualify to participate in the Modified Duty Off-Site Program. Through CareWorks USA, Alro Steel Corporation, has agreements with several non-profit organizations to provide temporary placement for you within your outlined restrictions.
 Your CareWorks USA Case Manager, Chris McCully, has secured a position at a local non-profit facility that is within your physician outlined restrictions. This is a temporary placement and the purpose of this temporary placement is to facilitate a timely and safe return to work with the ultimate goal of returning to work on-site at Alro Steel Corporation.
 You are scheduled to report to work at Goodwill Industries, 3301 Nationway, Cheyanne [sic], WI [sic] from 9:00 a.m.-5:00 p.m. beginning on Friday, August 18th, 2006. On Friday, your first day, please arrive at the agency at 1:00 p.m. Your CareWorks USA Case Manager will be meeting you at the off-site location on this day. Your supervisor at the agency is Tami * * *.
 While participating in the MDOS program, you will be required to follow all Company HR policies. (Please refer to Company Employee Handbook.) An employee who fails to show up for a scheduled work day @ the non-profit and has not followed the procedure for calling off will be considered to have quit without notice unless an acceptable reason has been given and is accepted by Company Management.
 Please note that refusal of the MDOS placement may result in termination of all Workers' Compensation benefits. *Page 7 
 Your employer is fully committed to bringing every injured employee back to work. If you chose not to return to work on the date and time stated above, you will be considered to have voluntarily quit your employment with Alro Steel Corporation.
 {¶ 20} 15. According to an August 16, 2006 email from Amy Pittman at Voc Works, the August 16, 2006 letter from Cheryl Watkins was to be faxed to Chris McCully who was to contact relator about the August 18, 2006 meeting.
 {¶ 21} 16. According to an August 16, 2006 email from Chris McCully to Amy Pittman:
 * * * I contacted Mr. Sebring to confirm our 8/18 meeting at Goodwill at 1:00 pm. Initially, he reported that he was unable to attend as he was in Ohio. During our conversation, he then reported he was actually in Nebraska, enroute to Ohio and would remain in Ohio thru Labor Day, returning after the holiday. He also reported that he has paperwork indicating that he was to remain on TTD through Labor Day and states he was unaware that Dr. Cook released him to modified duty. Mr. Sebring states he is traveling w/other people and would be unable to return to Wyoming for the scheduled meeting. * * *
 {¶ 22} 17. According to relator, while he was in Ohio, an Alro representative contacted him to pick up his Alro check for unused vacation time.
 {¶ 23} 18. On September 8, 2006, relator went to Alro where he was met by Alro General Manager Frank T. Pastor, Guerra and Craig Hancock.
 {¶ 24} 19. At the September 8, 2006 meeting, relator was handed a letter dated August 21, 2006 signed by Pastor. The August 21, 2006 letter states:
 This letter is to certify our extension of an offer of employment for work that is within your current medical restrictions dated 8/4/06.
 The offer of employment would include clerical and administrative work assistance in our second shift operations department *Page 8 
at our Toledo-Airport Highway facility that would include but not be limited to general filing and distribution of pick tickets.
 {¶ 25} 20. At the September 8, 2006 meeting, relator was handed another letter dated September 8, 2006 signed by Pastor. That letter states:
 This letter is to certify your denial on September 8th, 2006 of our offer of employment, document dated August 21st, at our Toledo-Airport Highway facility.
 {¶ 26} 21. On September 8, 2006, Pastor signed an Alro memorandum summarizing the meeting with relator. The memorandum is also signed by Guerra and Hancock as witnesses. The memorandum states:
 • I gave Billy his check.
 • I told him we have light duty work available for him at this building.
 • He told me he was leaving to go back to Wyoming within a few days, so he would not be available to work. He said he was taking a train back out, so the car he was driving is probably not his (GMC Sierra Pick-up black, * * * OH plates).
 • I asked him if he could work the few days he was still in town.
 • He said he was staying too far away from the facility, told me he was in Port Clinton OH, and that he would not be able to get out here.
 • Told me he might be moving to Oregon as his wife may be receiving another promotion.
 • Redirected and asked him "So you are turning down the offer of light duty work?"
 • He said yes.
 • I asked him to sign the offer letter and the denial letter. He looked at them and said, "Call my lawyer; if he says I can sign them I will sign them."
 • I then said "so you won't sign the letters?"
 • He said no.
 • End of meeting *Page 9 
 {¶ 27} 22. On September 19, 2006, relator was seen by Dr. Cook at Cheyenne, Wyoming. Dr. Cook wrote:
 SUBJECTIVE: Mr. Sebring returns today for a follow-up and is status post epidural steroid injection. Unfortunately this did not help him much at all and he continues to have rather significant lumbosacral pain.
 PLAN: At this point in time, we discussed other options which might include L4-5 and L5-S1 facet block. He would like to proceed in this direction and we will see him back for follow-up. We will maintain his current restrictions and in fact he has been offered a job which was felt to fall under my current restrictions, and I certainly think it would be a [sic] reasonable to at least consider this activity. We will have to see if Mr. Sebring will tolerate it given his continued discomfort. We will see him back following this injection.
 {¶ 28} 23. On September 19, 2006, Dr. Cook completed a "Physician's Report of Work Ability" form (MEDCO-14). On the form, Dr. Cook marked a box stating that relator "[i]s totally disabled from work from 9/19/6 to Followup."
 {¶ 29} 24. On September 21, 2006, Dr. Cook completed a form indicating that relator can perform "sedentary work only."
 {¶ 30} 25. On September 28, 2006, Alro moved for termination of TTD compensation. In its motion, Alro cited a "Letter of Verbal Refusal of light duty work." Apparently, this is a reference to the September 8, 2006 memorandum signed by Pastor, Guerra and Hancock.
 {¶ 31} 26. Following a November 22, 2006 hearing, a DHO issued an order granting Alro's motion to terminate TTD compensation. The DHO's order states:
 Temporary total disability is TERMINATED as of 9/8/06. Injured worker refused a light duty job offer within his restrictions. The fact that the restrictions were not submitted to the attending physician is not dispositive as there is no *Page 10 
requirement in the Ohio Revised Code for such a submission.
 This order is based upon the reports of Dr. Cook, 9/19/06, 9/21/06, and 8/4/06 and the written job offer on file.
(Emphasis sic.)
 {¶ 32} 27. Relator administratively appealed the DHO's order of November 22, 2006.
 {¶ 33} 28. Following a January 5, 2007 hearing, an SHO issued an order stating that the DHO's order was being modified. The SHO's order explains:
 The Hearing Officer GRANTS the request to terminate Injured Worker's Temporary Total Disability benefits as of 9/8/2006, due to the Injured Worker's refusal of a written light-duty job offer.
 The Hearing Officer finds Injured Worker restrictions are outlined by Dr. Cook, on 9/19/2006, 9/21/2006, and 8/4/2006. The Hearing Officer finds the written job offer, dated 9/8/2006, is within Injured Worker's restrictions as provided by Dr. Cook. The Hearing Officer further finds that on 9/8/2006, the Injured Worker was personally provided with a copy of the letter and verbally offered the light-duty work. Therefore, the Hearing Officer does not find the Injured Worker's argument that the description of job activity is too vague to be persuasive. The letter of 8/21/2006 clearly indicates that the Injured Worker's work activities would include clerical and Administrative work assistance in the second shift operations at the Toledo Airport Highway Facility that would include but not be limited to general filing and distribution of pick tickets. The Hearing Officer finds that if there was some question or confusion as to whether the job duties were within Injured Worker's restrictions, he could have clarified them at the time he personally saw the Employer who provided him with the written description of work activity.
 Therefore, the Hearing Officer finds that pursuant to [State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401], the Injured Worker was provided with a good faith job offer that was within his work restrictions and *Page 11 
he refused it. Therefore, Temporary Total Disability benefits should terminate 9/8/2006, the date of the refusal of the job offer.
(Emphasis sic.)
 {¶ 34} 29. Relator administratively appealed the SHO's order of January 5, 2007. On January 31, 2007, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of January 5, 2007.
 {¶ 35} 30. On February 16, 2007, relator moved for reconsideration.
 {¶ 36} 31. On March 17, 2007, the three-member commission, one member dissenting, mailed an interlocutory order stating:
 It is the finding of the Industrial Commission that the injured worker has presented evidence of sufficient probative value to warrant adjudication of the request for reconsideration regarding the alleged presence of a clear mistake of fact in the order from which reconsideration is sought and a clear mistake of law of such character that remedial action would clearly follow.
 Specifically, it is alleged that the Staff Hearing Officer did not correctly apply the provisions of OAC 4121-3-32 (A)(6) in addition to the elements of Louisiana-Pacific.
 The order issued 01/31/2007 is vacated, set aside and held for naught.
 Based on these findings, the Industrial Commission directs that the injured worker's request for reconsideration filed 02/16/2007 is to be set for hearing to determine if the alleged mistakes of fact and law as noted herein are sufficient for the Industrial Commission to invoke its continuing jurisdiction.
 {¶ 37} 32. Following a May 1, 2007 hearing before the commission, the commission issued the following order:
 * * * [I]t is the finding of the Industrial Commission that it does not have authority to exercise continuing jurisdiction pursuant to R.C. 4123.52 and State ex rel. Nicholls v. Indus. *Page 12 Comm. (1998), 81 Ohio St.3d 454, State ex rel. Foster v. Indus. Comm. (1999), 85 Ohio St.3d 320, and State ex rel. Gobich v. Indus. Comm. (2004), 103 Ohio St.3d 585. The injured worker has failed to meet his burden of proving that sufficient grounds exist to justify the exercise of continuing jurisdiction. Therefore, the injured worker's request for reconsideration, filed 02/16/2007, is denied and the order of the Staff Hearing Officer, issued 01/12/2007, remains in full force and effect.
 {¶ 38} 33. On August 23, 2007, relator, William R. Sebring, Jr., filed this mandamus action.
Conclusions of Law: {¶ 39} Two main issues are presented. Did the commission abuse its discretion in failing to adjudicate: (1) whether the September 8, 2006 job offer violated a commission rule requiring that the offered employment be performed "within a reasonable proximity of the injured worker's residence," and (2) whether the job offer was made in good faith under the rule?
 {¶ 40} The magistrate finds: (1) the commission did not abuse its discretion in failing to address whether the offered employment was "within a reasonable proximity of the injured worker's residence," and (2) the commission did not abuse its discretion in failing to address whether the job offer was made in good faith.
 {¶ 41} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 42} R.C. 4123.56(A) provides that payment of TTD compensation shall not be made for the period "when work within the physical capabilities of the employee is made available by the employer or another employer."
 {¶ 43} Supplementing the statute, Ohio Adm. Code 4121-3-32 provides: *Page 13 
 (A) * * * The following definitions shall be applicable to this rule:
 * * *
 (3) "Suitable employment" means work which is within the employee's physical capabilities.
 * * *
 (6) "Job offer" means a proposal, made in good faith, of suitable employment within a reasonable proximity of the injured worker's residence. If the injured worker refuses an oral job offer and the employer intends to initiate proceedings to terminate temporary total disability compensation, the employer must give the injured worker a written job offer at least forty-eight hours prior to initiating proceedings. If the employer files a motion with the industrial commission to terminate payment of compensation, a copy of the written offer must accompany the employer's initial filing.
 (B)
 * * *
 (2) Except as provided in paragraph (B)(1) of this rule, temporary total disability compensation may be terminated after a hearing as follows:
 * * *
 (d) Upon the finding of a district hearing officer that the employee has received a written job offer of suitable employment.
 {¶ 44} Turning to the first issue, in effect, relator suggests that the word "residence" in Ohio Adm. Code 4121-3-32(A)(6) includes a new residence adopted by an injured worker during a lay off period that is not in reasonable proximity to the job site of his former position of employment. Relator's suggestion lacks merit. *Page 14 
 {¶ 45} It is obvious that the purpose of the "reasonable proximity" rule is to prohibit an employer from compelling its injured worker to relocate his residence as a condition of further employment. It is also obvious that the rule was not promulgated for the purpose of allowing an injured worker to move his residence to a location not in reasonable proximity to the job site of his former position of employment such that the employer cannot offer employment within reasonable proximity of the injured worker's new residence.
 {¶ 46} Relator's suggested interpretation of "residence" turns a rule designed to protect injured workers into one that can be used by an injured worker to prevent the employer from exercising its right under the statute to make an offer of suitable employment. In short, relator's suggested interpretation of the word "residence" in Ohio Adm. Code 4121-3-32(A)(6) is inconsistent with the above-noted provision of R.C. 4123.56(A) which provides to an employer the right to offer suitable alternative employment that will eliminate the payment of TTD compensation.
 {¶ 47} Turning to the second issue, in State ex rel. Ellis Super Valu,Inc. v. Indus. Comm., 115 Ohio St.3d 224, 2007-Ohio-4920, the court had occasion to clarify the distinction between the employer's defense of voluntary abandonment of employment and the defense of refusal of suitable alternative employment. The court observed that the latter presumes an injury-induced inability to return to the former position of employment. "There is no need to propose alternate employment if the claimant's inability to return to the former position is attributable to anything other than the injury." Id. at ¶ 9. *Page 15 
 {¶ 48} In Ellis Super Valu, Susan B. Hudgel's inability to return to her former position of employment was not in dispute. The employer, Ellis Super Value ("ESV"), offered Hudgel a light-duty position consistent with her medical restrictions, but she declined because the offered employment required her to work evenings. Although Hudgel normally worked the day shift five days a week, ESV offered a position requiring her to work during evening hours when Hudgel's two teenage children would be at home alone on the nights that her husband worked. In response to ESV's offer, Hudgel asked whether she could work three days and two nights instead, but received no reply from ESV.
 {¶ 49} A DHO awarded TTD compensation up to the date of Hudgel's alleged refusal of the job offer. On administrative appeal, an SHO reversed, finding that Hudgel had a valid reason for the refusal and, hence, did not abandon her former position of employment.
 {¶ 50} ESV filed a complaint in mandamus in this court alleging that the commission had abused its discretion in awarding TTD compensation despite the "voluntary abandonment." This court disagreed and denied the writ. ESV appealed as of right to the Supreme Court of Ohio.
 {¶ 51} In Ellis Super Valu, the court clarified at the outset that the case is not about voluntary abandonment. Rather, the facts raised the possibility of the defense of "suitable alternative employment."
 {¶ 52} The Supreme Court of Ohio reversed the judgment of this court and issued a writ ordering the commission to further consider the claim and issue an amended order: *Page 16 
 In this case, all agree that the light-duty job offered was within Hudgel's medical ability. This is all that R.C. 4123.56(A) expressly requires, but the statute must be read in pari materia with the Ohio Administrative Code provision that supplements it. Ohio Adm. Code 4121-3-32(A)(6) defines "job offer" in this context as a proposal "made in good faith." The parties debate whether good faith existed, but contrary to their suggestion, the commission has not addressed this issue. Whether Hudgel exercised good faith in refusing the job offer does not answer whether ESV exercised good faith in extending it, which must be addressed. If ESV consciously crafted a job offer with work shifts that it knew Hudgel could not cover — as Hudgel alleges and ESV denies — then good faith may not exist. That, however, is a factual determination for the commission.
Id. at ¶ 13.
 {¶ 53} Clearly, contrary to relator's position here, the Ellis SuperValu case does not compel this court to issue a writ of mandamus.
 {¶ 54} Relator must accept responsibility for his decision to move his residence to a location that makes it difficult to accept an offer of suitable alternative employment at the location of his former position of employment.
 {¶ 55} Even though the economic reality of his spouse's employment may have prompted the relocation of his residence, relator cannot shift to the employer the responsibility of accommodating the difficulty of his reporting to work at Toledo, Ohio, when his residence is at Cheyenne, Wyoming.
 {¶ 56} Relator does not seriously dispute the key facts or events leading to the September 8, 2006 job offer, nor does relator dispute the accuracy of the September 8, 2006 Alro memorandum that summarizes the meeting. What relator disputes is Alro's "purpose" in offering the position — suggesting that Alro was not interested in facilitating *Page 17 
relator's return to work, but wanted simply to create a basis to terminate TTD compensation. (Relator's brief, at 8.)
 {¶ 57} The September 8, 2006 Alro memorandum is indeed some evidence that relator refused, without legal justification, a job offer of suitable employment. In fact, there is no dispute that the job being offered was suitable employment — that is the employment was within relator's physical capabilities. Clearly, that relator had moved his residence to Cheyenne, Wyoming, or that he anticipated yet another relocation to Oregon due to his wife's employment, is not legal justification for refusing an offer of employment to be performed at the location of his former position of employment at Toledo, Ohio.
 {¶ 58} The "good faith" issue that relator attempts to raise is flawed by the underlying premise that relator is not responsible for his decision to relocate his residence. In short, there is no issue of "good faith" for the commission to adjudicate under the undisputed circumstances here. Accordingly, the commission did not abuse its discretion.
 {¶ 59} It is therefore the magistrate's decision that this court deny relator's request for a writ of mandamus. *Page 1