THE STATE EX REL. MARRERO, APPELLANT, *v.* INDUSTRIAL

COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Marrero v. Indus. Comm.*,

**126 Ohio St.3d 439, 2010-Ohio-3755.**]

*Workers' compensation — Wage-loss compensation — Good-faith job search is a*

*prerequisite — Judgment affirmed.*

(No. 2009-1666 — Submitted July 6, 2010 — Decided August 18, 2010.)

APPEAL from the Court of Appeals for Franklin County, No. 08AP-922,

2009-Ohio-4382.

_____

**Per Curiam**.

{¶ 1} At issue is appellant Maria Marrero's request for wage-loss compensation. Marrero was injured in the course of her employment with Oakridge Home, a nursing facility owned by appellee Life Care Centers of America, Inc. While the injury prevented a return to her former position of employment as a nurse's aide, it did not prevent her from doing light-duty work.

{¶ 2} Marrero soon began working a light-duty job at Oakridge. Over the next several months, Marrero rarely worked a 40-hour week, resulting in a weekly income that was less than it was before her injury. Based on her diminished earnings, Marrero sought to make up the difference and applied for wage-loss compensation.

{¶ 3} The Bureau of Workers' Compensation granted Marrero's application, and Life Care appealed to appellee Industrial Commission of Ohio. The commission denied wage-loss compensation because Marrero did not perform a good-faith job search, and the Court of Appeals for Franklin County, in

mandamus, upheld that decision. *State ex rel. Marrero v. Indus. Comm.*, Franklin App. No. 08AP-922, 2009-Ohio-4382, 2009 WL 2623784, ¶ 13.

**{¶ 4}** Marrero now appeals as of right to this court.

**{¶ 5}** R.C. 4123.56(B)(1) wage-loss compensation is intended for claimants who are medically unable to return to their former positions of employment but who can do other work. *State ex rel. Ellis Super Valu, Inc. v. Indus. Comm.*, 115 Ohio St.3d 224, 2007-Ohio-4920, 874 N.E.2d 780, ¶ 11. It encourages a return to the workforce by paying a percentage of the difference between preinjury and postinjury wages in the event that the claimant's postinjury earnings are less than before due to the injury. Id.

**{¶ 6}** Under Ohio Adm.Code 4125-1-01(D)(1)(c), claimants who are seeking working-wage-loss compensation must show proof of a good-faith search for work within his or her medical and vocational capabilities that has pay comparable to that of the former position of employment. Marrero concedes that she did not perform a job search. She insists, however, that her failure to do so is excused by Life Care's failure to act in good faith. Marrero alleges that Life Care offered her full-time, light-duty employment, which she accepted. She then accuses Life Care of effectively reneging on its offer through selective scheduling that gave her only part-time hours. Marrero argues that Life Care's selective scheduling not only limited her income but prevented her from seeking other work.

**{¶ 7}** For a writ of mandamus to issue, Marrero must demonstrate that she has a clear legal right to the relief sought. *State ex rel. Teece v. Indus. Comm.* (1981), 68 Ohio St.2d 165, 167, 22 O.O. 3d 400, 429 N.E.2d 433. In this case, Marrero's allegation of bad faith is not supported by the record. First, there is no evidence that Life Care offered Marrero full-time, light-duty work. There is no written job offer of record, and we do not find that Marrero's handwritten record of hours worked constitutes evidence of an offer of full-time, light-duty work.

That document simply corroborates other evidence that Marrero worked less than full time.  We note, moreover, a February 8, 2008 letter to Marrero from Oakridge that specifically states, "[W]e do not have permanent 'light duty' assignments * * *."  Lacking any evidence of misrepresentation on Life Care's part, we decline to find that Life Care misled Marrero into forgoing a job search.

{¶ 8}  Equally untenable is Marrero's claim that her schedule prevented a search for other work.  Marrero alleges that she could be added to or removed from the daily schedule without warning, a circumstance that prevented her from committing to an additional part-time job that could ameliorate her wage loss.  This situation, she contends, rendered a job search pointless.  Her argument, however, assumes that the only way to diminish her wage loss was by taking a second part-time job.  It ignores the possibility that had Marrero done a job search, she might have found more satisfactory full-time work elsewhere.  And because she worked third shift, any assertion that her hours — erratic or otherwise — prevented her from effectively looking for other work is baseless.

{¶ 9}  The judgment of the court of appeals is affirmed.

Judgment affirmed.

O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

BROWN, C.J., and PFEIFER and LUNDBERG STRATTON, JJ., dissent.

_____

**BROWN, C.J., dissenting.**

{¶ 10} I respectfully dissent.  Consistent with the opinion of the court of appeals' magistrate, I would remand this case to the Industrial Commission for reevaluation of Marrero's application for wage-loss compensation.

{¶ 11} In my view, the Industrial Commission abused its discretion in denying in its entirety Marrero's working-wage-loss compensation application.  The commission denied the application on the sole basis that "there is no evidence

that the Injured Worker engaged in a good faith job search for alternate work consistent with her physical restrictions in order to mitigate her wage loss."

{¶ 12} Marrero argues that her employer had led her to believe she would be provided full-time, light-duty employment at the same rate of pay she received prior to her injury. She provided supporting evidence of that fact, and the employer provided no evidence to the contrary. Her evidence demonstrated that during the month of March 2007, her employer originally scheduled her to work full-time hours, but thereafter sent her home twice, took her off the schedule five times, and cut short her hours on three other occasions. With the exception of one day in July 2007, Marrero worked a full-time, light-duty schedule that entire month. It was not until the end of August 2007 that Marrero noted that her employer was "no longer giving [her a] full time 5 days a week schedule." While it is true that the employer sent Marrero a letter specifically stating that it had no "permanent 'light duty' assignments," that letter was not sent until February 2008—nearly a year after her return to work.

{¶ 13} The employer concedes that Marrero "apparently worked all hours available and offered to her" but nevertheless argues that she alone "has the burden to insure the presentation and preservation of evidence in the record as to the reasons she did not have full time work." In effect, it is the position of Marrero's employer that an employer may lead a returning worker to the reasonable belief that she has a full-time job consistent with her postinjury limitations at the same rate of pay—then, in the event that the employer fails to provide the expected work and the worker subsequently applies for wage-loss compensation, fault the worker for not looking for a different full-time job.

{¶ 14} In denying Marrero's claim, the commission improperly made evidence of a "good faith effort to search for suitable employment which is comparably paying work," Ohio Adm.Code 4125-1-01(D)(1)(c), a sine qua non of an award of wage-loss compensation—even in circumstances in which the worker

reasonably believes that she already has secured comparably paying work. The text of R.C. 4123.56 (the wage-loss-compensation statute) does not justify that conclusion; neither does Ohio Adm.Code 4125-1-01 or this court's precedent.

**{¶ 15}** R.C. 4123.56 does not expressly impose on a wage-loss claimant the duty to engage in a job search. It simply provides that an employee with an allowed workers' compensation claim who "suffers a wage loss *as a result of* returning to employment other than the employee's former position of employment due to an injury or occupational disease" shall receive wage-loss compensation for up to 200 weeks. (Emphasis added.) R.C. 4123.56(B)(1). An award of wage-loss compensation thus requires a causal relationship between the wage loss and the allowed injury. The implementing regulation, Ohio Adm.Code 4125-1-01(D)(1)(c)—not the statute—provides that in giving consideration to a claimant's search for suitable employment, a "good faith effort to search for suitable employment which is comparably paying work *is required * * *.*" (Emphasis added.) In my view, this provision is consistent with R.C. 4123.56, and therefore valid and enforceable, only to the extent that a failure to undertake a job search demonstrates that the wage loss is not causally related to the allowed injury, i.e., that the wage loss is the result of a separate and independent reason.

**{¶ 16}** Accordingly, this court has held that it is the responsibility of the commission to view "the claimant's employment situation broadly" to determine whether a worker who works part-time hours without looking for a full-time position has *voluntarily* limited her income. *State ex rel. Brinkman v. Indus. Comm.* (1999), 87 Ohio St.3d 171, 174, 718 N.E.2d 897. In that event, the wage loss is not causally related to the allowed injury, as required by R.C. 4123.56. In recognizing exceptions to the good-faith job- search requirement of Ohio Adm.Code 4125-1-01(D)(1)(c), this court has held that it is inconsistent with the wage-loss-compensation statute to require a good-faith job search in every wage-loss compensation case. See, e.g., *Brinkman*, id.; *State ex rel. Timken Co. v.*

*Kovach*, 99 Ohio St.3d 21, 2003-Ohio-2450, 788 N.E.2d 1037, ¶ 22. I support the conclusion of the Tenth District Court of Appeals that "the analysis discussed in *Brinkman* should be applied to all situations in which an injured employee obtains post-injury part-time employment to determine whether, under the totality of that individual employee's circumstances, the limitation of income was voluntary." *State ex rel. Borden, Inc. v. Martin*, Franklin App. No. 03AP-257, 2004-Ohio-4647, ¶ 12.

{¶ 17} In my view, this case should be remanded for adjudication of the point in time at which Marrero reasonably should have recognized that her employer was not going to provide her with full-time work. Until that time, her failure to look for other full-time light-duty work should not bar an award of wage-loss compensation. A worker should not be required to undertake a good-faith job search if she reasonably believes that she already has a job providing equivalent pay. I would therefore expressly recognize an exception to the good-faith job-search requirement of Ohio Adm.Code 4125-1-01(D)(1)(c) when an employer leads an injured worker to the reasonable belief that full-time, comparably paid working hours will be offered, but thereafter fails to provide that work.

{¶ 18} Accordingly, and consistent with the reasoning of the magistrate in the court of appeals, I would issue a writ of mandamus ordering the commission to consider the facts and circumstances surrounding Marrero's employment situation prior to either granting or denying Marrero's wage-loss-compensation claim. Only then will the commission be able to make an informed determination as to whether the claimant voluntarily limited her compensation to preclude an award of wage-loss compensation and, if so, determine the date at which Marrero's acceptance of part-time work may be deemed voluntary so as to thereafter bar an award of wage-loss compensation.

PFEIFER and LUNDBERG STRATTON, JJ., concur in the foregoing opinion.

_____

Shapiro, Shapiro & Shapiro Co., L.P.A., Leah P. VanderKaay, and Daniel L. Shapiro, for appellant.

Richard Cordray, Attorney General, and Elise Porter, Assistant Attorney General, for appellee Industrial Commission.

Deborah Sesak, for appellee Life Care Centers of America, Inc.

_____