DECISION
{¶ 1} Relator, Ellis Super Valu, Inc., seeks a writ of mandamus that directs respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting temporary total disability ("TTD") compensation to respondent Susan B. Hudgel ("claimant").
 {¶ 2} Pursuant to Loc.R. 12(M) of the Tenth District Court of Appeals, this court appointed a magistrate to consider the matter without limitation of powers specified in Civ.R. 53(C). The magistrate examined the evidence and issued a decision wherein she made findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate concluded that relator failed to show that the commission abused its discretion, and the magistrate recommended denial of relator's request for a writ of mandamus.
 {¶ 3} Relator has filed objections to the magistrate's decision. See, generally, Civ.R. 53(E)(3). In its objections, relator asserts:
The magistrate erred in her decision in several respects: (1) the magistrate, like the Commission, improperly construed O.R.C.4123.56 and O.A.C. 4121-3-32 to permit a "lifestyle" or other "good reason" exception applicable to light duty job offers; (2) by reweighing the evidence and substituting her judgment for that of the Commission; and (3) by speculating as to the Industrial Commission hearing officer's thought processes beyond the written decision of the Commission.
 {¶ 4} To be entitled to a writ of mandamus, relator must show: (1) a clear legal right to the relief requested; (2) respondent is under a clear legal duty to perform the act sought; and (3) relator has no plain and adequate remedy at law. Stateex rel. Fain v. Summit Cty. Adult Probation Dept. (1995),71 Ohio St.3d 658, citing State ex rel. Howard v. Ferreri (1994),70 Ohio St.3d 587, 589.
 {¶ 5} "`[D]etermination of disputed factual situations is within the final jurisdiction of the Industrial Commission, and subject to correction by action in mandamus only upon a showing of abuse of discretion.'" State ex rel. Morris v. Indus. Comm.
(1984), 14 Ohio St.3d 38, 39, quoting State ex rel. Haines v.Indus. Comm. (1972), 29 Ohio St.2d 15, 16; State ex rel. Poseyv. Indus. Comm. (1984), 12 Ohio St.3d 298, 299. An abuse of discretion occurs "where there is no evidence upon which the commission could have based its factual conclusion." State exrel. Morris, at 39, citing State ex rel. Posey, supra; Stateex rel. Questor Corp. v. Indus. Comm. (1982), 70 Ohio St.2d 240,241, citing State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 6} Before the commission and before this court's magistrate, relator has asserted that claimant voluntarily abandoned her employment when she refused relator's written offer of light duty.
 {¶ 7} Abandonment of employment can preclude payment of TTD compensation. State ex rel. Diversitech Gen. Plastic Film Div.v. Indus. Comm. (1989), 45 Ohio St.3d 381, 383. "The question of abandonment is `primarily * * * [one] of intent * * * [that] may be inferred from words spoken, acts done, and other objective facts. * * * All relevant circumstances existing at the time of the alleged abandonment should be considered.'" Id., quotingState v. Freeman (1980), 64 Ohio St.2d 291, 297. ConstruingWest Park Shopping Center, Inc. v. Masheter, Dir. of Hwys.
(1966), 6 Ohio St.2d 142, 144, the Diversitech court stated: "Similarly, [West Park Shopping Center] held that `"[a]n abandonment is proved by evidence of intention to abandon as well as of acts by which the intention is put into effect."'"Diversitech, at 383. "The presence of such intent, being a factual question, is a determination for the commission."Diversitech, at 383, citing State ex rel. Allied WheelProducts, Inc. v. Indus. Comm. (1956), 166 Ohio St. 47.
 {¶ 8} In this case, after claimant sustained a work-related injury, a claim for right shoulder sprain was allowed. At the time of her work-related injury, claimant typically worked from 6:00 a.m. until 3:00 or 4:00 p.m. on Mondays, and she worked from 6:30 a.m. until 1:00 or 2:00 p.m. on Tuesdays through Saturdays.
 {¶ 9} By letter dated September 13, 2004, relator offered claimant a job within her physical restrictions that required claimant to work six nights per week. On September 23, 2004, claimant made a counteroffer wherein she claimed that she was unable to work six nights per week and, instead, claimant offered to work three days and two nights per week. According to claimant, relator was aware that working six nights per week constituted a hardship to claimant. Relator failed to respond to claimant's counteroffer.
 {¶ 10} On October 7, 2004, relator appealed from an administrator's order allowing claimant's workers' compensation claim for a right shoulder sprain. By order of a district hearing officer ("DHO"), TTD compensation was awarded to claimant from August 23 to September 23, 2004. However, finding that, on September 23, 2004, claimant voluntarily abandoned employment by refusing relator's light-duty job offer, the DHO found claimant was not entitled to TTD compensation after September 23, 2004. Claimant appealed from the DHO's order. Claimant's appeal was later heard by a staff hearing officer ("SHO").
 {¶ 11} Finding that claimant did not voluntarily abandon her former position of employment, the SHO vacated the DHO's order. In his order, the SHO allowed TTD compensation for the period of August 23 to September 23, 2004. The SHO also awarded TTD compensation to claimant for additional periods after September 23, 2004, upon submission of medical evidence that documented claimant's inability to return to work and to perform the duties of her former position of employment. The commission refused to consider relator's appeal from the SHO's order.
 {¶ 12} Whether claimant abandoned her job is a factual determination for the commission. Diversitech, at 383, citingState ex rel. Allied Wheel Products, Inc., supra. "It is within the sole discretion of the Industrial Commission to determine the resolution of factual disputes and a court cannot, as an essential basis for awarding a writ of mandamus, substitute its findings on a question of fact for the findings of the commission." Kingry v. Complete Gen. Constr. Co. (Mar. 26, 1985), Franklin App. No. 84AP-109, citing State ex rel. Wallacev. Indus. Comm. (Nov. 6, 1984), Franklin App. No. 83AP-890;State ex rel. Hutton v. Indus. Comm. (1972), 29 Ohio St.2d 9;State ex rel. Haines, at 15.
 {¶ 13} "`Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion.'" State ex rel.Avalon Precision Casting Co. v. Indus. Comm.,109 Ohio St.3d 237, 2006-Ohio-2287, at ¶ 9, quoting State ex rel. Mobley v.Indus. Comm. (1997), 78 Ohio St.3d 579, 584. {¶ 14} Thus, in this original action, the issue therefore resolves to whether the SHO's factual determination that claimant did not voluntary abandon her job constitutes an abuse of discretion.
 {¶ 15} Relying in part upon claimant's testimony at the hearing and claimant's counteroffer of September 23, 2004, as contained in the joint stipulation of evidence, and apparently inferring from claimant's testimony and her counteroffer that claimant did not intend to voluntary abandon her employment, the SHO determined that claimant did not voluntarily abandon her former position of employment. Under the facts and circumstances of this case, because the SHO based his decision in part upon claimant's testimony and her counteroffer to relator, we conclude there is "some evidence" in the record to support the SHO's conclusion that claimant did not voluntarily abandon her employment.
 {¶ 16} Because there is some evidence to support the SHO's determination that relator did not voluntarily abandon her employment, we agree with the magistrate's conclusion that relator has not shown that the commission abused its discretion by awarding TTD compensation to claimant. However, although we agree with the magistrate's ultimate conclusion that relator has not shown that the commission abused its discretion, we do not agree with the reasoning advanced by the magistrate in her conclusions of law that support the magistrate's ultimate conclusion.
 {¶ 17} In its objections, relator claims that: (1) the magistrate and the commission improperly construed R.C. 4123.56
and Ohio Adm. Code 4121-3-32 to permit a "lifestyle" or other "good reason" exception to job offers; (2) the magistrate reweighed the evidence; (3) the magistrate substituted her judgment for that of the commission; and (4) the magistrate speculated as to the commission's thought process.
 {¶ 18} In State ex rel. Warner Cable Communications, Inc. v.Indus. Comm. (Apr. 12, 1994), Franklin App. No. 93AP-383, this court already has noted its mindfulness "that the various statutory guidelines for temporary total disability compensation as stated in R.C. 4123.56 and the various regulations incorporated in Ohio Adm. Code 4121-3-32 create some definitional gray areas for an employer as far as the payment of temporary total disability compensation and the potential termination of such compensation if some form of work is available." Therefore, because this court already noted the existence of such definitional gray areas, relator's assertion that the magistrate and commission improperly construed R.C. 4123.56 and Ohio Adm. Code 4121-3-32 is not convincing.
 {¶ 19} Furthermore, even assuming arguendo that relator's claims of other purported errors by the magistrate are meritorious, such purported errors are immaterial because, as discussed above, relator has failed to show that the commission's factual determination that claimant did not voluntarily abandon her employment constitutes an abuse of discretion.
 {¶ 20} Accordingly, for the foregoing reasons, we conclude that the magistrate properly discerned the pertinent facts and properly determined that relator failed to show that the commission abused its discretion. However, although we agree with the magistrate's findings of fact and her recommendation that a writ of mandamus should not lie, we disagree with the magistrate's conclusions of law. Therefore, we adopt the magistrate's findings of fact, but we do not adopt her conclusions of law. Based upon the foregoing reasons, we independently conclude that relator has not shown that the commission abused its discretion.
 {¶ 21} Accordingly, having concluded that relator has not shown that the commission abused its discretion, we therefore deny relator's request for a writ of mandamus. Furthermore, for the reasons discussed above, we overrule relator's objections to the magistrate's decision.
Objections overruled; writ denied.
Bryant and McGrath, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : Ellis Super Valu, Inc., :
Relator, :
v. No. 05AP-531 :
Industrial Commission of Ohio and Susan B. Hudgel, :
Respondents. :
 MAGISTRATE'S DECISION Rendered on October 25, 2005 Beirne Wirthlin, Co., L.P.A., Andrew R. Thaler and J.Stephen Wirthlin, for relator.
Jim Petro, Attorney General, and Dennis L. Hufstader, for respondent Industrial Commission of Ohio.
Casper Casper, and Douglas W. Casper, for respondent Susan B. Hudgel.
 IN MANDAMUS {¶ 22} Relator, Ellis Super Valu, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted temporary total disability ("TTD") compensation to respondent Susan B. Hudgel ("claimant"), and ordering the commission to find that claimant is not entitled to TTD compensation on the basis that claimant refused a suitable job offer from relator.
Findings of Fact:
 {¶ 23} 1. Claimant sustained a work-related injury on August 20, 2004, and her claim has been allowed for "sprain right shoulder."
 {¶ 24} 2. Relator's treating physician, E.R. Wanat, II, D.O., completed a C-84 certifying claimant as temporarily totally disabled from September 8, 2004 through an estimated return-to-work date of September 22, 2004.
 {¶ 25} 3. As of September 8, 2004, claimant was released to return to work with medical restrictions. Those restrictions included that she avoid reaching overhead, avoid forceful or repetitive arm movements and refrain from lifting, pushing or pulling more than ten pounds.
 {¶ 26} 4. By letter dated September 13, 2004, relator offered claimant a job within her physical restrictions. The job duties for which claimant would be responsible were described as follows: "Entering new items into the system[;] Entering price changes[;] Price checking when needed by cashiers[;] Verifying prices [and] Periodically run register (sackers are available)." Pursuant to the job offer, the days and hours claimant would be working were Friday, Saturday, Sunday, Monday, Tuesday and Thursday, from 3 to 9 p.m.
 {¶ 27} 5. On September 23, 2004, claimant indicated on the job offer form that she was "unable to do that shift[;] can do 3 days + 2 nights but not 6 nights."
 {¶ 28} 6. Relator never responded to claimant's modified acceptance of the September 13, 2004 job offer. The record contains an explanation by claimant relative to her reasons for her not being able to accept relator's September 13, 2004 job offer. That explanation provides, in pertinent part, as follows:
* * * I worked as a meat wrapper/deli person for Ellis Super Valu in Waynesville Ohio for the last 2 years. I worked from 6am — 3 or 4pm on Mondays and 6:30am — 1 or 2 pm Tues — Saturday with Thursday and Sunday off. * * * I was injured on 8/20/04 and brought in the same restrictions (8/23/04 9/8/04) from two separate doctors. * * * Ron Kronenberger offered me a job by mail on 9/15/04 working from 3 — 9 pm 6 nights a week entering new items into the system, entering price changes, price checking when needed by cashiers, verifying prices and periodically running a register. Ron knew that working 6 nights a week would be a hardship on me because I have a family to take care of. I had put in a counter offer to work 3 nights and 2 days since what they want me to do can be done at anytime of the day or night[.] Darlene told me and my husband that she would talk to Ron and call me later. I never heard from either Darlene or Ron again. I asked for this schedule because my husband also works 1-3 nights a week and he could take care of the kids on the nights I worked. I know my children are 16 and 13 but they still can't take care of making dinner for themselves because they have homework and after school activities. Ron Kronenberger has stated in the last appeal (11/08/04) that he knew it would be a hardship on me, but because they are a small family store he couldn't see paying me to work days because I wouldn't really be doing much, but working the evening shifts as one of the only adults their [sic] would give him a better reason to pay me.
 {¶ 29} 7. Relator's appeal relative to the administrator's order allowing claimant's workers' compensation claim for sprain right shoulder was heard before a district hearing officer ("DHO") on November 8, 2004. The DHO ordered the claim allowed for "right shoulder strain/sprain," and ordered TTD compensation paid from August 23 to September 23, 2004. However, the DHO found that claimant had voluntarily abandoned her job when she refused relator's good-faith light-duty job offer on September 23, 2004. The DHO found that claimant's choice not to work due to the shift hours was a refusal of the job for reasons unrelated to the medical condition.
 {¶ 30} 8. Claimant appealed and the matter was heard before a staff hearing officer ("SHO") on January 7, 2005. The SHO rejected relator's argument that claimant was not entitled to TTD compensation after September 23, 2004 as a result of her refusal to accept the good-faith light-duty job offer. The SHO found that under the circumstances, claimant did not voluntarily abandon her former position of employment because she had a valid reason not to accept the particular position offered to her as follows:
The employer argued at hearing that the injured worker was not entitled to payment of temporary total disability compensation after 09/23/2004 as she voluntarily abandoned her former position of employment as a result of her failure to except [sic] a light duty job offer. The Hearing Officer rejects this argument.
The Hearing Officer finds that the injured worker was offered a position which involved entering price items into a system, verifying prices, entering price changes and doing price checking when needed by cashiers.
This light duty position was offered from 3:00 PM to 9:00 PM Thursday through Tuesday. The injured worker indicated that she would be unable to work that shift because her husband worked between one (1) and three (3) nights a week and there would be nobody to take care of her children on the nights that she worked. The injured worker signed the light duty job offer and indicated that she was unable to accept the shift that was offered but would be able to work three (3) days and two (2) nights doing the job which was offered by the employer. The employer did not respond to the injured worker's statement that she could work three (3) days and two (2) nights.
Under the circumstances, the Staff Hearing Officer finds that the injured worker did not voluntarily abandon her former position of employment as she had a valid reason why she could not take the light duty position which required her to work between 3:00 PM and 9:00 PM Thursday night through Tuesday night. The injured worker had child care issues that precluded her from taking the position offered by the employer and communicated this to the employer. Therefore the Staff Hearing Officer finds that there is no basis for termination of Temporary Total Disability Compensation after 09/23/2004.
The Hearing Officer's decision is based on the 09/08/2004 report from Kettering Worker's Care, Dr. Martillia dated 05/18/2004, the report from Dr. Onamusi dated 09/23/2004, the C-84 from Dr. Wanat dated 09/20/2004, the light duty job offer in file dated 09/13/2004, the injured worker's testimony at hearing as well as her statement dated 01/05/2005.
 {¶ 31} 9. Relator's further appeal was refused by order of the commission mailed January 29, 2005.
 {¶ 32} 10. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 33} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 34} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. See R.C. 4123.56(A); State exrel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630.
 {¶ 35} Ohio Adm. Code 4121-3-32 provides the following definitions which are relevant to this determination:
(A)(3) "Suitable employment" means work which is within the employee's physical capabilities.
* * *
(6) "Job offer" means a proposal, made in good faith, of suitable employment within a reasonable proximity of the injured worker's residence. If the injured worker refuses an oral job offer and the employer intends to initiate proceedings to terminate temporary total disability compensation, the employer must give the injured worker a written job offer at least forty-eight hours prior to initiating proceedings. If the employer files a motion with the industrial commission to terminate payment of compensation, a copy of the written offer must accompany the employer's initial filing.
 {¶ 36} In the present case, relator argues that the job offer it made to claimant was made in good-faith, since it was within claimant's restrictions, and was within a reasonable proximity of claimant's residence. As such, relator contends that claimant's refusal to accept its job offer, for any reason, constituted a voluntary abandonment of her employment and negated her right to receive TTD compensation. Relator argues that where a job offer is within the injured worker's restrictions and is within reasonable proximity to their residence, an injured worker is required to accept the job offer or forfeit TTD compensation.
 {¶ 37} Conversely, claimant argues that, while the job offer was within her physical restrictions and was within a reasonable proximity to her residence, the job offer was not made in good-faith because the employer knew that those hours would pose a significant hardship on claimant. Furthermore, claimant made a "counter offer," so to speak, indicating that she was willing to work some nights provided that she be allowed to work nights when her husband could be home to be with the children. Relator did not respond. While deciding to have children is a lifestyle decision which some people make, in the present case, the magistrate finds that relator's need and desire to be home in the evenings with her children does not constitute the type of "lifestyle choice" that the courts have identified as one which cuts against an injured worker's entitlement to compensation.
 {¶ 38} In the present case, the magistrate finds that the commission did not abuse its discretion. The record reflects that claimant made a good-faith effort to work with relator in light of relator's willingness to put claimant back on the payroll. However, the magistrate finds that relator's argument, that the only valid reason claimant could have refused the job offer was if the job offer was either outside her medical restrictions or was too far from her home, ignores the fact that there could be other reasons why a determination could be made that the employer's offer was not made in good-faith or that the employee had a valid reason, other than a "lifestyle choice," to refuse the job offer without compromising her ability to receive TTD compensation. These matters should be decided by the commission on a case-by-case basis. At oral argument, counsel for relator asserted that there was no specific finding by the SHO that its job offer was not made in good faith and, at least, a limited writ should be granted. The magistrate disagrees and finds that, even without expressly stating that it found the job offer was not made in good-faith, by finding claimant had a valid reason to refuse it, the commission found a lack of "good-faith" and there is no reason to send this back to the commission. The magistrate finds no abuse of discretion in this situation.
 {¶ 39} Based on the foregoing, it is the magistrate's decision that relator has not demonstrated that the commission abused its discretion by granting claimant TTD compensation and this court should deny relator's request for a writ of mandamus.