[Cite as *State ex rel. Ryan Alternative Staffing, Inc. v. Moss*, 2020-Ohio-5197.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Ryan Alternative Staffing, Inc., | : | |
| Relator, | : | |
| v. | : | No. 19AP-245 |
| Bridget M. Moss et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on November 5, 2020

**On brief:** *Morrow & Meyer, LLC,* and *Mary E. Ulm,* for relator.

**On brief:** *Boyd, Rummell, Carach, Curry, Kaufman & Bins-Castronovo Co., LPA,* and *Matthew N. Bins-Castronovo*, for respondent Bridget M. Moss.

**On brief:** *Dave Yost,* Attorney General, and *Douglas R. Unver,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

KLATT, J.

{¶ 1} Relator, Ryan Alternative Staffing, Inc., commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order that awarded temporary total disability ("TTD") compensation to claimant/respondent, Bridget M. Moss ("claimant"). Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which

is appended hereto. The magistrate noted the commission's determination that relator exercised good faith in offering the claimant suitable alternative employment, which the claimant refused. Nevertheless, the magistrate found that the commission did not abuse its discretion in awarding the claimant a closed period of TTD compensation based upon its finding that the claimant's refusal of relator's offer of suitable alternative employment was also made in good faith. Therefore, the magistrate has recommended that we deny relator's request for a writ of mandamus.

{¶ 2} Relator has filed objections to the magistrate's decision. Principally relying on *State ex rel. Ellis Super Valu, Inc. v. Indus. Comm.*, 115 Ohio St.3d 224, 2007-Ohio-4920, relator argues the magistrate erred in finding that the commission did not abuse its discretion in awarding a closed period of TTD compensation when it considered both relator's good-faith offer of suitable alternative employment and claimant's good-faith rejection of that offer. We agree.

{¶ 3} All parties contend that *Ellis* is dispositive of this case. However, the parties interpret *Ellis* differently.

{¶ 4} In *Ellis*, the Supreme Court of Ohio was confronted with a factual scenario very similar to that presented in the case at bar. The claimant in *Ellis* was unable to return to her former position of employment due to a work-related injury. Her employer offered her a light-duty position consistent with her medical restrictions, but the claimant declined the offer because the position required her to work evenings. Apparently, the claimant could not work during the evenings because she had two teenage children that would be home alone on the nights that her husband worked. The staff hearing officer for the commission determined that the claimant had a valid reason for declining the offer of suitable alternative employment and, hence, did not abandon her former position of employment. Based upon this determination, the commission awarded claimant TTD compensation. The employer brought an action in mandamus in this court seeking to vacate the commission's award, but we denied the writ. The employer appealed this court's decision to the Supreme Court.

{¶ 5} The Supreme Court began its analysis by emphasizing that this factual scenario does not involve the concept of voluntary abandonment, a concept that focuses on whether or not the claimant's inability to return to the former position of employment is

due to the work-related injury or due to a nonmedical reason–most commonly, employment termination or a voluntary refusal to return. *Ellis*, 115 Ohio St.3d 224, 2007-Ohio-4920, at ¶ 8. The *Ellis* court then contrasted the concept of voluntary abandonment with a claimant's refusal of suitable alternative employment, which does not require an assessment of why the claimant refused to return to his or her former position of employment. The court reasoned that this is so because there would be no need to propose suitable alternative employment if the claimant's inability to return to the former position of employment was caused by anything other than the work-related injury. Instead, the court stated:

> [T]he relevant inquiry in this situation is why the claimant has rejected an offer to ameliorate the amount of wages lost. This, in turn, can involve considerations of, for example, employment suitability, the legitimacy of the job offer, or whether the position was offered in good faith. The causal-relation question in this situation is different [from voluntary abandonment] because it derives from a different compensatory intent, which is to facilitate the claimant's return to the work force. As critical as compensating injured workers and their dependents is, it is not the only goal addressed by the workers' compensations system. Assisting a claimant's return to gainful employment is also important, benefiting not only the employer and employee, but society at large.

*Ellis* at ¶ 9.

{¶ 6} The *Ellis* court emphasized that the defense of "refusal of suitable alternative employment arises from R.C. 4123.56(A), which prohibits the payment of TTD compensation "when work within the physical capabilities of the employee is made available by [an] employer." *Ellis* at ¶ 6, quoting R.C. 4123.56(A). However, the court stated that R.C. 4123.56(A) must be read in pari materia with Ohio Adm.Code 4121-3-32(A)(6) that defines "job offer" in this context as a proposal "made in good faith." The court further stated that whether the claimant "exercised good faith in refusing the job offer does not answer whether [the employer] exercised good faith extending it, which must be addressed." *Ellis* at ¶ 13. Because the commission never addressed whether the employer's offer of suitable alternative employment was made in good faith, the *Ellis* court reversed and remanded the case to the commission for a determination of that issue. *Id.*

{¶ 7} We read *Ellis* as permitting the commission to consider the claimant's reasons for refusing the offer of suitable alternative employment only in the context of deciding whether the employer's offer was made in good faith. Unlike *Ellis*, here the commission determined that relator's offer of suitable alternative employment was made in good faith. Relator points out that if a claimant's good-faith refusal of an employer's good-faith offer of suitable alternative employment were a defense to the application of R.C. 4123.56(A), there would have been no reason for the *Ellis* court to reverse and remand that decision for a determination of whether the employer's job offer was made in good faith, given that the claimant's good-faith refusal of the job offer was not disputed in *Ellis*. We agree. *Ellis* does not allow the commission to consider the claimant's reason for refusing the offer of suitable alternative employment *after* the commission has determined that the employer's offer was made in good faith. Any other conclusion would be inconsistent with R.C. 4123.56(A), Ohio Adm.Code 4121-3-32(A)(6), and the principle that there must be a causal relationship between the work-related injury and the claimant's inability to return to work to support an award of TTD compensation. That causal relationship would not exist if a claimant could reject an employer's good-faith offer of suitable alternative work for reasons unrelated to the claimant's workplace injury, even if the reasons for the claimant's rejection were understandable and based in good faith. For these reasons, we sustain relator's objections.

{¶ 8} Following an independent review of this matter, we find that magistrate has properly determined the facts but erred in her application of the law. Therefore, we adopt the magistrate's findings of fact but not her conclusions of law. For the reasons set forth above, we sustain the relator's objections and grant relator's request for a writ of mandamus.

*Objections sustained; writ of mandamus granted.*

BEATTY BLUNT and NELSON, JJ., concur.

_____

## APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Ryan Alternative Staffing, Inc., | : | |
| Relator, | : | |
| v. | : | No. 19AP-245 |
| Bridget M. Moss et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on April 2, 2020

*Morrow & Meyer, LLC,* and *Mary E. Ulm,* for relator.

*Boyd, Rummell, Carach, Curry, Kaufman & Bins-Castronovo, Co., L.P.A.,* and *Matthew N. Bins-Castronovo,* for respondent Bridget M. Moss.

*Dave Yost,* Attorney General, and *Douglas R. Unver,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 9} Relator, Ryan Alternative Staffing, Inc., has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which awarded temporary total disability compensation ("TTD") to respondent Bridget M. Moss ("claimant" or "Moss"), despite the fact that relator had offered Moss a job within her physical abilities.

Findings of Fact:

{¶ 10} 1. Claimant sustained a work-related injury on July 18, 2018 and her workers' compensation claim was allowed for "sprain of unspecified site of right knee."

{¶ 11} 2. On the date of her injury, claimant was working at Ram Plastics as a machinist. Ram Plastics was a client of relator, a temporary staffing agency.

{¶ 12} 3. Approximately two weeks later, claimant was released to return to work with restrictions.

{¶ 13} 4. That same day, relator made a verbal offer of employment to claimant for a job at relator's Warren office.  Claimant refused the job explaining she could not work those hours because she needed to be able to care for her disabled granddaughter during the hours offered.

{¶ 14} 5. In a letter dated August 2, 2018, relator offered claimant the same-light duty position which met the restrictions of her treating physician.  That letter provides:

> This letter is to confirm your refusal of the offer of light duty to begin on Friday, August 3, 2018 at our Warren office at 8:30 am. You refused this light duty offer on Thursday, August 2, 2018 due to not being able to work a day shift. You stated that you are only able to work 2nd shift due to watching your grandbaby during the day while your daughter is working.
>
> The light duty offer was to work in our Warren office located at * * *.
>
> Your work schedule would have been for 8:30am-5pm with a 1/2 hour unpaid lunch. You could have left for your follow up appointments as they became scheduled.
>
> The dress code would have been business casual and the pay rate would have been $8.30/HR. Your job duties would have included sit down inside clerical work. A list of job duties is attached that meets your current restrictions.

Relator also included a list of specific duties which claimant would be required to perform in this position.

{¶ 15} 6. Claimant refused to accept the position offered by relator on grounds that she was not available to work those hours because she provided childcare for her granddaughter.

{¶ 16} 7. Claimant filed a motion seeking TTD compensation beginning August 2, 2018.

{¶ 17} 8. Claimant's motion was heard before a district hearing officer ("DHO") on October 5, 2018. The DHO denied claimant's motion finding that relator had made a good faith offer of suitable employment which claimant had rejected thereby making her ineligible for the requested award of TTD compensation. The DHO summarized the basic facts:

> Subsequent to the industrial injury, which is the basis of this claim, the Injured Worker attempted to return to work, but was unable to work at her former position of employment as a machinist for a client of the temporary staffing agency, which employed her at that time. Upon following up with John Baumeier, DO, on 08/02/2018, the physician opined that the Injured Worker could return to restricted duty. In accordance with the Self-insuring employer's policy, Ms. Plasky contacted "RAM Plastics," the client company for which the Injured Worker was working when injured, to determine whether a position was available consistent with the restrictions imposed by Dr. Baumeier. When the client informed her that no such position was available, she contacted the Injured Worker by telephone to offer her a position with the temporary staffing agency itself. The Injured Worker refused this position, because the hours of work conflicted with her ability to care for her daughter's disabled child. As a consequence of the Injured Worker's refusal of this verbal offer, the Self-insuring Employer drafted a letter reducing the modified-duty job offer to writing and noting the Injured Worker's failure to accept same. This refusal to accept the modified-duty offer was the basis of Self-insuring Employer's denial of the request for payment of temporary total disability compensation benefits from 08/02/2018 through 09/08/2018. The Injured Worker testified that she returned to work with another employer on 09/09/2018.

{¶ 18} Thereafter, the DHO explained the parties' positions as follows:

> The Injured Worker maintains that the Self-insuring Employer was aware of her scheduling requirements, when she first signed up for work with the temporary staffing agency. Thus, she maintains that the modified-duty job offer for employment, at a shift which the temporary staffing agency knew she could not work, does not constitute a "good-

faith" offer under the provisions of Ohio Adm. Code 4123-3-32(A)(6).

In response, Ms. Plasky noted that the temporary staffing agency is only open during business hours. She further testified that other injured workers in the same situation have been provided with work at the temporary staffing agency's offices, when the client company at which they were injured could not accommodate the modified-duty work required by their injuries. Thus, she disputed any intent to fashion a position which the Injured Worker was incapable of filling.

{¶ 19} Thereafter, the DHO denied the requested period of compensation reasoning as follows:

The facts presented in this case are nearly identical to those in *State ex rel. Ellis Super Valu, Inc. v. Indus. Comm.,* 115 Ohio St.3d 224, 2007-Ohio-9240, 874 N.E.2d 780. In *Ellis*, the parties agreed that the light-duty position offered by the employer was consistent with the restrictions imposed by the injured worker's physician. *Id.* at ¶ 1. The only dispute was whether the injured worker was justified in refusing the offer, based upon the fact that it would require her to work a different shift *Id.* in sending the matter back to the Industrial Commission for further consideration, the Court held that the operative question was whether the employer "consciously crafted a job offer with work shifts that it knew Hudgel could not cover * * *. " *Id.* at ¶ 13.

In this case, Ms. Plasky's testimony regarding the regular course of business of the temporary staffing agency in such situations is found to be probative. Thus, the offer of employment at the temporary staffing agency's offices, albeit at a different time than the Injured Worker was accustomed to work, is not deemed to have been "consciously crafted" to present the Injured Worker with a position which she could not accept. Accordingly, this offer is deemed to have been made in "good faith," in accordance with the provisions of Ohio Adm.Code 4121-3-32(A)(6).

Based upon the foregoing analysis, the Self-insuring Employer did indeed offer employment within the Injured Worker's physical capabilities, as required by the provisions of R.C. 4123.56(A). Thus, the Injured Worker is not legally entitled to receive payments of Temporary Total Disability

Compensation benefits and such compensation for the period from 08/02/2018 through 09/08/2018 is denied.

This decision is based upon the testimony presented at the hearing by Ms. Plasky and the letter, dated 08/02/2018, from the Self-insuring Employer presenting a written offer of employment to the Injured Worker and noting her verbal refusal of same. The Hearing Officer reviewed and considered all evidence on file in issuing this decision.

{¶ 20} 9. Claimant appealed and the matter was heard before a staff hearing officer ("SHO") on November 19, 2018. The SHO vacated the prior DHO order and found that claimant was entitled to the requested closed period of compensation. The SHO specifically found that relator did make a good faith offer of employment; however, the SHO also found that claimant refused the light-duty job offered to her in good faith. Specifically, the SHO order provides:

The Staff Hearing Officer finds that the Employer asserted that temporary total disability compensation is not payable for this period because the Injured Worker's refusal of a light duty job offer constituted a voluntary abandonment of employment. However, the Staff Hearing Officer finds that this assertion is not well taken. The Staff Hearing Officer finds that the Employer offered the Injured Worker a light duty job within her physical restrictions on 08/02/2018 to begin work on 08/03/2018, for the Employer, the temporary agency, at the Employer's Warren office, in a sedentary, clerical position from 8:30 a.m. to 5:00 p.m. The Staff Hearing Officer specifically finds that the job offer was made in good faith by the Employer as this was the only position that the Employer had available to accommodate the Injured Worker's physical restrictions.

* * *

The Staff Hearing Officer finds the case of *State ex rel. Ellis Super Valu, Inc. v. Indus. Comm.,* 115 Ohio St.3d 224 (2007) to be instructive on this issue and specifically references the language in paragraph 13 of the opinion. The Staff Hearing Officer finds that the determinative issue with regard to the Injured Worker's entitlement to temporary total disability compensation in this claim is fact specific. The Staff Hearing Officer finds that whether the job offer was made in good faith and whether the Injured Worker exercised good faith in

refusing the job offer are factual determinations for the Industrial Commission. Herein, the Staff Hearing Officer finds that both the Employer and the Injured Worker acted in good faith. The Staff Hearing Officer finds that while the Injured Worker was physically capable of performing the light duty work, the reason that she was unable to accept the position was because she had family obligations and the timing for the shift of the light duty job was not feasible. Notwithstanding, the Staff Hearing Officer finds that the Injured Worker was unable to accept the light duty job offer, and she was also unable to return to her former position of employment due to the allowed condition of the claim. Accordingly, the Staff Hearing Officer finds that the temporary total compensation is payable in this claim.

This portion of the decision is based on the Injured Worker's testimony at hearing, the Employer's 08/04/2018 letter, and the *Ellis Super Valu* case.

The Self-Insuring Employer is hereby ordered to comply with the above findings.

{¶ 21} 10. Relator's appeal was refused by order of the commission mailed December 13, 2018.

{¶ 22} 11. Relator's request for reconsideration was denied by order of the commission mailed January 30, 2019.

{¶ 23} 12. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 24} For the reasons that follow, it is this magistrate's decision that relator has not demonstrated the commission abused its discretion in awarding claimant a closed period of TTD compensation, and this court should deny relator's request for a writ of mandamus.

{¶ 25} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 26} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley*

*v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 27} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. *See* R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 28} Ohio Adm.Code 4121-3-32(A)(3) defines "suitable employment" as "work that is within the employee's physical capabilities." "Job offer" is defined as a "proposal, made in good faith, of suitable employment within a reasonable proximity of the injured worker's residence." Ohio Adm.Code 4121-3-32(A)(6) If an injured worker refuses an oral job offer, the employer must put the offer in writing and describe the duties of the job if the employer wants to use the worker's refusal as grounds upon which to deny payment of TTD compensation.

{¶ 29} Both parties agree the Supreme Court of Ohio's decision in *State ex rel. Ellis Super Valu, Inc. v. Indus. Comm.,* 115 Ohio St.3d 224, 2007-Ohio-4920, is instructive. Susan B. Hudgel was unable to return to her former position of employment with her employer, Ellis Super Valu, Inc. as a result of the allowed conditions in her claim. The employer offered her a light-duty position consistent with her medical restrictions; however, Hudgel declined that position because it required her to work evenings. The employer argued that Hudgel was not eligible for TTD compensation because her refusal of

the light-duty job constituted a voluntary abandonment of employment. A DHO denied TTD compensation finding Hudgel's refusal of the good faith job offer constituted a voluntary abandonment of her job and rendered her ineligible to receive TTD compensation. The SHO determined that Hudgel did not voluntarily abandon her job finding Hudgel had a valid reason for the refusal. Further appeal was denied.

{¶ 30} The employer filed a mandamus action in this court in *State ex rel. Ellis Super Valu, Inc. v. Indus. Comm.,* 10th Dist. No. 05AP-531, 2006-Ohio-3014. This court's magistrate concluded there was no abuse of discretion on the part of the commission—because the commission found Hudgel had a good faith reason to reject the employer's offer of employment, she was eligible for TTD compensation. Specifically, this magistrate summarized the parties' positions before reaching her conclusion:

> In the present case, relator argues that the job offer it made to claimant was made in good-faith, since it was within claimant's restrictions, and was within a reasonable proximity of claimant's residence. As such, relator contends that claimant's refusal to accept its job offer, for any reason, constituted a voluntary abandonment of her employment and negated her right to receive TTD compensation. Relator argues that where a job offer is within the injured worker's restrictions and is within reasonable proximity to their residence, an injured worker is required to accept the job offer or forfeit TTD compensation.

> Conversely, claimant argues that, while the job offer was within her physical restrictions and was within a reasonable proximity to her residence, the job offer was not made in good-faith because the employer knew that those hours would pose a significant hardship on claimant. Furthermore, claimant made a "counter offer," so to speak, indicating that she was willing to work some nights provided that she be allowed to work nights when her husband could be home to be with the children. Relator did not respond. While deciding to have children is a lifestyle decision which some people make, in the present case, the magistrate finds that relator's need and desire to be home in the evenings with her children does not constitute the type of "lifestyle choice" that the courts have identified as one which cuts against an injured worker's entitlement to compensation.

> In the present case, the magistrate finds that the commission did not abuse its discretion. The record reflects that claimant

made a good-faith effort to work with relator in light of relator's willingness to put claimant back on the payroll. However, the magistrate finds that relator's argument, that the only valid reason claimant could have refused the job offer was if the job offer was either outside her medical restrictions or was too far from her home, ignores the fact that there could be other reasons why a determination could be made that the employer's offer was not made in good-faith or that the employee had a valid reason, other than a "lifestyle choice," to refuse the job offer without compromising her ability to receive TTD compensation. These matters should be decided by the commission on a case-by-case basis. At oral argument, counsel for relator asserted that there was no specific finding by the SHO that its job offer was not made in good faith and, at least, a limited writ should be granted. The magistrate disagrees and finds that, even without expressly stating that it found the job offer was not made in good-faith, by finding claimant had a valid reason to refuse it, the commission found a lack of "good-faith" and there is no reason to send this back to the commission. The magistrate finds no abuse of discretion in this situation.

*Id.* at ¶ 36-38.

{¶ 31} In affirming the magistrate's decision, this court reaffirmed certain principles: (1) whether a claimant has abandoned her job is a factual determination for the commission; (2) where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion. Finding some evidence supported the SHO's determination that Hudgel did not voluntarily abandon her employment, this court agreed with the magistrate that the commission did not abuse its discretion. Ellis Super Valu, Inc. appealed this court's decision to the Supreme Court.

{¶ 32} At the outset, the Supreme Court noted this was not a case of voluntary abandonment but that the facts raised the possibility of a different defense: the refusal of suitable alternate employment. Finding the commission had not properly addressed all the relevant issues, the court granted a writ of mandamus.

{¶ 33} The court discussed both the considerations of whether or not an employer has made a good faith offer of suitable employment and whether or not an employee has justifiably refused an offer of suitable employment. The court concluded by stating:

> In this case, all agree that the light-duty job offered was within Hudgel's medical ability. This is all that R.C. 4123.56(A) expressly requires, but the statute must be read in pari materia with the Ohio Administrative Code provision that supplements it. Ohio Adm.Code 4121-3-32(A)(6) defines "job offer" in this context as a proposal "made in good faith." The parties debate whether good faith existed, but contrary to their suggestion, the commission has not addressed this issue. Whether Hudgel exercised good faith in refusing the job offer does not answer whether ESV exercised good faith in extending it, which must be addressed. If ESV consciously crafted a job offer with work shifts that it knew Hudgel could not cover — as Hudgel alleges and ESV denies — then good faith may not exist. That, however, is a factual determination for the commission.

*Id.* at ¶ 13.

{¶ 34} Relator argues here that, inasmuch as the commission determined that its offer of modified-duty work to Moss was made in good faith, Moss was required to accept that position or find herself ineligible to receive TTD compensation. Ellis Super Valu, Inc. had made the same argument to this court. However, in the present case, after making the factual finding that the offer of modified-duty work was, in fact, made in good faith, the commission also made the factual determination that Moss, in good faith, refused to accept that position. The magistrate finds there is no reason, legal or otherwise, for this court to find that the commission, as fact finder, cannot make both these findings in a particular case such as the one currently before us. Such a determination accepts that, in this situation, relator can only offer Moss a job during hours which Moss is unable to work while at the same time conceding that, but for the fact that Moss could not work these hours, she would not have had a good faith reason to reject this offer of employment.

{¶ 35} Counsel for relator argues that if the Supreme Court in *Ellis* actually intended to create a defense for claimants who, in good faith, reject an offer of suitable employment, the court would have awarded Hudgel TTD compensation after agreeing she had, in good faith, refused the offer of employment.[1] Instead, the court first clarified this was not a voluntary abandonment situation because the lack of Hudgel's inability to return to her former position of employment is not in question: she was medically unable to do so.

---

[1] In fact, this magistrate had recommended the same in *Ellis* and this court agreed.

Second, the relevant inquiry is why Hudgel rejected an offer to ameliorate her lost wages. Third, the court stressed that factual determinations are the province of the commission and that, before a determination could be made, the commission had to first determine whether the offer of employment had indeed been made in good faith.

{¶ 36} In the present case, the commission considered the evidence before it, made factual determinations, cited the evidence upon which it relied, applied the relevant case law to those factual determinations, and provided an explanation for its conclusion. In so doing, the magistrate finds the commission did not abuse its discretion when it found that Moss was eligible to receive the closed period of TTD compensation and this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

### NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).