Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

---

Ernest F. McAdams Jr. and Kevin P. Roberts, for relator.

George D. Jonson, for respondent.

THE STATE EX REL. ELLIS SUPER VALU, INC., APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Ellis Super Valu, Inc. v. Indus. Comm.*, 115 Ohio St.3d 224, 2007-Ohio-4920.]

(No. 2006–1414—Submitted May 24, 2007—Decided September 27, 2007.)

**Per Curiam.**

{¶ 1} No one disputes appellee Susan B. Hudgel's inability to return to her former position of employment. Her employer, appellant Ellis Super Valu, Inc. ("ESV"), offered her a light-duty position consistent with her medical restrictions, but Hudgel declined because the position required her to work evenings. We must determine whether her refusal bars temporary total disability compensation under R.C. 4123.56(A).

{¶ 2} Hudgel industrially injured her right shoulder on August 20, 2004, and a workers' compensation claim was allowed. She was unable to return to her former position of employment through September 22, 2004, but was able to do light-duty work. On September 13, 2004, ESV offered her a position within her medical restrictions. Her work schedule would be from 3:00 p.m. to 9:00 p.m. six days per week, which "would allow you to work your normal number of hours at your current salary."

{¶ 3} Hudgel normally worked the day shift five days per week, beginning at 6 a.m. Hudgel informed ESV on September 23 that she could not work the proposed schedule. She later explained that the night shift was unacceptable because she had two teenage children that would be home alone on the nights that her husband worked. She asked ESV whether she could work three days and two nights instead, but received no reply.

{¶ 4} On November 8, 2004, in response to Hudgel's request for temporary total disability compensation, a district hearing officer for appellee Industrial Commission of Ohio ordered compensation from August 23, 2004, through September 23, 2004, but denied it after that date, finding that Hudgel's refusal of ESV's light-duty offer constituted a voluntary abandonment of employment. A staff hearing officer reversed, finding that Hudgel had a valid reason for refusal and, hence, did not abandon her former position of employment. Further appeal was denied.

{¶ 5} ESV filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion in awarding temporary total disability compensation despite Hudgel's "voluntary abandonment." The court of appeals disagreed and denied the writ, resulting in ESV's appeal to this court as of right.

{¶ 6} We clarify at the outset that this is not a case of voluntary abandonment. Rather, the facts of this case raise the possibility of a different defense: refusal of

suitable alternate employment. R.C. 4123.56(A) prohibits the payment of temporary total disability compensation "when work within the physical capabilities of the employee is made available by [an] employer." Both defenses affect a claimant's eligibility for temporary total disability compensation, but they derive from different compensatory theories and involve distinct analyses.

{¶ 7} Fundamental to receipt of any workers' compensation benefits is a causal relationship between injury and disability. Temporary total disability compensation is no exception and is designed to compensate for the temporary loss of earnings sustained while the claimant is unable to return to the former position of employment due to injury. *State ex. rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 517 N.E.2d 533. For many years, there were three main defenses to the payment of temporary total disability compensation: (1) the claimant is medically able to return to the former position, (2) the claimant's condition is no longer temporary, and (3) the claimant's inability to return to the former position of employment is not due to injury. See *State ex rel. Ramirez v. Indus. Comm.* (1982), 69 Ohio St.2d 630, 632, 23 O.O.3d 518, 433 N.E.2d 586; *Ashcraft.*

{¶ 8} The defense of voluntary abandonment derives from the last of the three. In a case of voluntary abandonment, the claimant's inability to return to the former position of employment is never in dispute. What is instead always at issue is the reason for that inability. Common to every voluntary-abandonment controversy is the existence of two independent reasons for the claimant's inability to return to the former position of employment. One is medical and one is not, with the two most common nonmedical reasons being an employment termination or a voluntary refusal to return. The issue in every voluntary-abandonment case is which cause was primary and which was secondary.

{¶ 9} That is not the case with the defense of refusal of suitable alternate employment. This defense does not ask why the claimant has not returned to his former position of employment, because the answer is inherent in the mere fact of a job offer. There is no need to propose alternate employment if the claimant's inability to return to the former position is attributable to anything other than the injury. Instead, the relevant inquiry in this situation is why the claimant has rejected an offer to ameliorate the amount of wages lost. This, in turn, can involve considerations of, for example, employment suitability, the legitimacy of the job offer, or whether the position was offered in good faith. The causal-relation question in this situation is different because it derives from a different compensatory intent, which is to facilitate the claimant's return to the work force. As critical as compensating injured workers and their dependents is, it is not the only goal addressed by the workers' compensations system. Assisting a claimant's return to gainful employment is also important, benefiting not only the employer and employee, but society at large.

{¶ 10} Unfortunately, for many years, this latter goal was hampered by a major shortcoming in the temporary total disability scheme: it did not accommodate claimants who could not return to the former position of employment but were medically capable of other work. Unless other employment at least matched a claimant's weekly temporary total disability benefits, claimants had no incentive to return to the work force and often remained unemployed rather than jeopardize temporary total disability.

{¶ 11} The General Assembly addressed this problem in 1986 with major amendments to R.C. 4123.56. Foremost was the creation of a new form of wage-loss compensation that encouraged return to the work force by paying the difference between a claimant's former wages and the earnings in the new job. R.C. 4123.56(B), now (B)(1), 141 Ohio Laws, Part I, 767. As a further incentive to return to the work force, R.C. 4123.56(A) was amended to provide that a claimant who was offered a job within his or her physical capacities could not receive temporary total disability compensation if he or she refused that job. 141 Ohio Laws, Part I, 766.

{¶ 12} Given these distinct inquiries, a finding that a claimant has unjustifiably refused an offer of suitable alternate employment does not translate into a finding that the claimant voluntarily abandoned the former position of employment. In fact, they are mutually exclusive. An offer of alternate employment would occur only when a claimant is medically unable to return to the former position of employment. In such a case, a finding of voluntary abandonment could not be sustained, since a claimant cannot voluntarily abandon a position that he or she is medically incapable of performing. *State ex rel. OmniSource Corp. v. Indus. Comm.*, 113 Ohio St.3d 303, 2007-Ohio-1951, 865 N.E.2d 41.

{¶ 13} In this case, all agree that the light-duty job offered was within Hudgel's medical ability. This is all that R.C. 4123.56(A) expressly requires, but the statute must be read in pari materia with the Ohio Administrative Code provision that supplements it. Ohio Adm.Code 4121-3-32(A)(6) defines "job offer" in this context as a proposal "made in good faith." The parties debate whether good faith existed, but contrary to their suggestion, the commission has not addressed this issue. Whether Hudgel exercised good faith in refusing the job offer does not answer whether ESV exercised good faith in extending it, which must be addressed. If ESV consciously crafted a job offer with work shifts that it knew Hudgel could not cover—as Hudgel alleges and ESV denies—then good faith may not exist. That, however, is a factual determination for the commission.

{¶ 14} The judgment of the court of appeals is reversed, and the commission is ordered to further consider the claim and issue an amended order.

Judgment reversed
and writ granted.

Moyer, C.J., and Pfeifer, Lundberg Stratton, O'Connor, O'Donnell, and Cupp, JJ., concur.

Lanzinger, J., concurs in judgment only.

———

Beirne & Wirthlin Co., L.P.A., Michael J. Schutte, and J. Stephen Wirthlin, for appellant.

Casper & Casper and Douglas W. Casper, for appellee Susan B. Hudgel.

Marc Dann, Attorney General, and Eric C. Harrell and Sue A. Wetzel, Assistant Attorneys General, for appellee Industrial Commission.

