[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ryan Alternative Staffing, Inc. v. Moss*, Slip Opinion No. 2021-Ohio-3539.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-3539

THE STATE EX REL. RYAN ALTERNATIVE STAFFING, INC., APPELLEE, *v*. MOSS; INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ryan Alternative Staffing, Inc. v. Moss*, Slip Opinion No. 2021-Ohio-3539.]

*Workers' compensation—Nothing in R.C. 4123.56(A) or Ohio Adm.Code 4121-3-32(A)(6) permits an injured worker to receive temporary-total-disability compensation after refusing a good-faith offer of suitable alternative employment, even if the injured worker exercised good faith in refusing the offer—Orders of the Industrial Commission's hearing officers exhibit confusion about the correct standard under which employer's good faith is to be determined—Court of appeals' judgment vacated and limited writ issued ordering the commission to reconsider this case under the proper standard.*

(No. 2020-1545—Submitted June 29, 2021—Decided October 6, 2021.)

APPEAL from the Court of Appeals for Franklin County, No. 19AP-245, 2020-Ohio-5197.

_____

**Per Curiam.**

{¶ 1} Appellant, Industrial Commission of Ohio, granted temporary-total-disability ("TTD") compensation to Bridget M. Moss. Moss's employer, appellee, Ryan Alternative Staffing, Inc. ("Ryan"), asked the Tenth District Court of Appeals for a writ of mandamus ordering the commission to vacate its order and deny compensation because Moss had refused an offer of alternative employment within her medical restrictions. The Tenth District granted the writ.

{¶ 2} We vacate the Tenth District's judgment and issue a limited writ ordering the commission to reconsider the claim under the correct standard, as explained below.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 3} Moss sustained a work injury while employed by Ryan in a second-shift position, working 4:00 p.m. to midnight. Her workers' compensation claim was allowed for a knee sprain, and she requested TTD compensation. Ryan, a self-insuring employer, offered Moss work within her medical restrictions, but on the day shift. Moss refused the offer because she had to care for her granddaughter during the day while her daughter worked. Ryan denied Moss's TTD-compensation request because she had turned down the job offer.

{¶ 4} Moss asked the commission to order Ryan to approve compensation, asserting that Ryan knew she could not work the day shift, so its offer of light-duty work was not made in good faith. A district hearing officer ("DHO") denied the motion, finding that Ryan had not consciously crafted a position it knew Moss could not accept.

{¶ 5} Moss appealed, and a staff hearing officer ("SHO") vacated the DHO's order and granted Moss's request for TTD compensation, finding that while

Ryan had made the offer in good faith, Moss had also refused it in good faith. Ryan appealed the SHO's decision; the commission declined to hear the appeal. Ryan moved for reconsideration, which the commission likewise denied.

{¶ 6} Ryan then filed this action in the Tenth District seeking a writ of mandamus ordering the commission to vacate the SHO's order and reinstate the DHO's order. The magistrate recommended denying the writ, but the court sustained Ryan's objections and granted it. 2020-Ohio-5197, ¶ 1, 8. The commission appealed.

## II. ANALYSIS

### A. Mandamus Standard

{¶ 7} To be entitled to a writ of mandamus, Ryan must show that it has a clear legal right to the relief requested, that the commission has a clear legal duty to provide it, and that Ryan lacks an adequate remedy in the ordinary course of the law. *State ex rel. Omni Manor, Inc. v. Indus. Comm.*, 162 Ohio St.3d 264, 2020-Ohio-4422, 165 N.E.3d 273, ¶ 9.

### B. Good-Faith Offer of Suitable Alternative Employment

{¶ 8} R.C. 4123.56(A) provides that payment for TTD compensation "shall not be made" for periods "when work within the physical capabilities of the employee is made available by the employer." In *State ex rel. Ellis Super Valu, Inc. v. Indus. Comm.*, 115 Ohio St.2d 224, 2007-Ohio-4920, 874 N.E.2d 780, ¶ 13, we held that R.C. 4123.56(A) must be read in pari materia with Ohio Adm.Code 4121-3-32(A)(6), which provides, " 'Job offer' means a proposal, made in good faith, of suitable employment within a reasonable proximity of the injured worker's residence." "Suitable employment" simply means "work which is within the employee's physical capabilities." Ohio Adm.Code 4121-3-32(A)(3).

{¶ 9} There is no dispute that Ryan made an offer of suitable alternative employment, and no one claims it was not within a reasonable proximity of Moss's residence. The commission also found that the offer was made in good faith.

**{¶ 10}** The question presented is whether in such a situation the commission may nevertheless award TTD compensation if the employee refuses the offer in good faith based on family circumstances. R.C. 4123.56(A) answers this question in the negative: "payment *shall not be made* for the period * * * when work within the physical capabilities of the employee is made available by the employer or another employer." (Emphasis added.) The statute grants the commission no discretion to award TTD compensation if the employer makes an offer complying with R.C. 4123.56(A) and Ohio Adm.Code 4121-3-32(A)(6).

**{¶ 11}** Despite the statute's clear directive, the parties, commission, and court of appeals all analyzed this case under *Ellis*, the facts of which were similar to those in this case. In *Ellis*, an injury prevented Susan Hudgel from returning to her former day-shift position, but her employer, Ellis Super Valu, Inc. ("ESV"), offered her a light-duty position on the evening shift. 115 Ohio St.3d 224, 2007-Ohio-4920, 874 N.E.2d 780, at ¶ 1-3. Hudgel rejected the offer because her husband also worked in the evenings and she did not want to leave her two teenaged children home alone. *Id.* The DHO treated the matter as a case of voluntary abandonment of employment and denied TTD compensation, but the SHO reversed that decision and awarded compensation, finding that Hudgel had a good reason for declining the light-duty offer and therefore did not voluntarily abandon her employment. The Tenth District declined to issue a writ of mandamus, and ESV appealed.

**{¶ 12}** In *Ellis*, we first explained that the case did not involve a voluntary abandonment of employment but rather implicated a different defense to the obligation to pay TTD compensation: refusal of an offer of suitable alternative employment. *Id.* at ¶ 6, citing R.C. 4123.56(A). We then explained: "[T]he relevant inquiry in this situation is why the claimant has rejected an offer to ameliorate the amount of wages lost. This, in turn, can involve considerations of,

for example, employment suitability, the legitimacy of the job offer, or whether the position was offered in good faith." *Id*. at ¶ 9. Finally, we concluded:

> Ohio Adm.Code 4121-3-32(A)(6) defines "job offer" in this context as a proposal "made in good faith." The parties debate whether good faith existed, but contrary to their suggestion, the commission has not addressed this issue. Whether Hudgel exercised good faith in refusing the job offer does not answer whether ESV exercised good faith in extending it, which must be addressed. If ESV consciously crafted a job offer with work shifts that it knew Hudgel could not cover—as Hudgel alleges and ESV denies—then good faith may not exist. That, however, is a factual determination for the commission.

(Emphasis added.) *Id*. at ¶ 13. We returned the matter to the commission to further consider the claim. *Id*. at ¶ 14.

{¶ 13} In this case, the commission focuses on the language in our *Ellis* decision that states that the "relevant inquiry in this situation is why the claimant has rejected an offer" and that the inquiry "can involve considerations of, *for example*, employment suitability, the legitimacy of the job offer, or whether the position was offered in good faith" (emphasis added), *Ellis* at ¶ 9. Based on this, the commission asserts that the existence of a good-faith offer is only one of several factors it may consider and that it properly exercised its discretion by determining that Moss's good-faith rejection of the job offer meant that she could receive TTD compensation.

{¶ 14} However, nothing in R.C. 4123.56(A) or Ohio Adm.Code 4121-3-32(A)(6) permits an injured worker to receive TTD compensation after refusing a good-faith offer of suitable alternative employment, even if the injured worker exercised good faith in refusing the offer. And we did not create an exception in

*Ellis* for situations in which familial obligations prevent an injured worker from accepting a legitimate, good-faith offer of suitable alternative employment—nor could we have, as this court cannot create a duty enforceable in mandamus, *State ex rel. Manor Care, Inc. v. Bur. of Workers' Comp.*, 163 Ohio St.3d 87, 2020-Ohio-5373, 163 N.E.3d 434, ¶ 19.

{¶ 15} Ryan's knowledge of Moss's daytime obligations was relevant to the commission's determination of Ryan's good faith in making the offer. But Moss's familial obligations were not an independent reason that could justify an award of TTD compensation in spite of a job offer complying with R.C. 4123.56(A) and Ohio Adm.Code 4121-3-32(A)(6).

### C. Limited Writ

{¶ 16} That conclusion raises the question whether the matter should be returned to the commission for further consideration, rather than for the issuance of an order denying compensation, as the Tenth District directed. The commission is the exclusive finder of fact in workers' compensation matters. *State ex rel. Navistar, Inc. v. Indus. Comm.*, 160 Ohio St.3d 7, 2020-Ohio-712, 153 N.E.3d 7, ¶ 21. And the existence of good faith is "a factual determination for the commission." *Ellis*, 115 Ohio St.3d 224, 2007-Ohio-4920, 874 N.E.2d 780, at ¶ 13.

{¶ 17} Ryan argues that because the commission already found that it made the job offer in good faith, the matter is settled. However, the orders of the commission's hearing officers exhibit confusion about the correct standard under which Ryan's good faith is to be determined.

{¶ 18} Both the DHO's and the SHO's orders evince confusion about what facts can establish bad faith on the part of an employer. The DHO focused on our statement in *Ellis* that "good faith may not exist" if the employer consciously crafts a job offer with work shifts that it knows the injured worker cannot cover, *id.* at ¶ 13. The DHO stated, "[T]he offer of employment * * * is not deemed to have

been 'consciously crafted' to present the Injured Worker with a position which she could not accept. *Accordingly*, this offer is deemed to have been made in 'good faith,' * * *." (Emphasis added.)

{¶ 19} But our discussion in *Ellis* was driven by the specific allegation of bad faith in that case—it was not a limitation on what might constitute good or bad faith in other cases. The conscious crafting of a position that the employer knows the employee cannot accept is one way—but not the only way—an employer might make a job offer in bad faith. Yet the DHO appears to have believed that the commission could find bad faith on Ryan's part only if Ryan consciously crafted a position it knew Moss could not accept. The DHO's finding of good faith hinged on the fact that Ryan had offered other injured workers a similar position before and therefore did not craft this position specifically for Moss, yet that fact does not necessarily mean that Ryan acted in good faith in Moss's case.

{¶ 20} The SHO vacated the DHO's order but, like the DHO, found that Ryan had made the offer in good faith. The SHO made this finding with almost no explanation or analysis, suggesting that she may have relied on the DHO's reasoning. The only reason the SHO gave for her finding was that the proffered position was the only one Ryan had available that fit Moss's medical restrictions. But that fact also does not necessarily mean that Ryan acted in good faith in this case. Moreover, despite her finding of "good faith," the SHO clearly believed that Moss should receive TTD compensation—an incorrect result under the statute, if the correct standard for determining good faith had been applied.

{¶ 21} We therefore vacate the Tenth District's judgment and issue a limited writ ordering the commission to reconsider this case under the proper standard, as articulated in this opinion. *See State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 458-459, 692 N.E.2d 188 (1998) (commission's exercise of continuing jurisdiction is justified by clear mistake of fact and/or clear mistake of law).

### III. CONCLUSION

{¶ 22} In light of the foregoing, we vacate the Tenth District's judgment and issue a limited writ ordering the commission to reconsider the claim in conformity with this opinion.

Judgment vacated

and limited writ granted.

O'CONNOR, C.J., and FISCHER, DONNELLY, STEWART, and BRUNNER, JJ., concur.

KENNEDY, J., dissents, with an opinion joined by DEWINE, J.

_____

**KENNEDY, J., dissenting.**

{¶ 23} Because Bridget M. Moss declined a good-faith offer of suitable employment for reasons unrelated to her workplace injury, she severed the causal connection between her injury and her loss of wages. For this reason, she is no longer entitled to temporary-total-disability ("TTD") compensation. I therefore would affirm the Tenth District Court of Appeals' judgment granting a writ of mandamus in favor of Moss's employer, appellee, Ryan Alternative Staffing, Inc. ("Ryan"), to compel appellant, Industrial Commission of Ohio, to vacate its order granting Moss TTD compensation and to deny compensation. Because the majority vacates the court of appeals' decision based on arguments that no one has asserted and that are contrary to the commission's statements in the record, I dissent.

{¶ 24} The principle underlying Ohio's system of workers' compensation is that "[a]ll forms of death and disability benefits provided by R.C. Chapter 4123 are intended to compensate 'for loss sustained on account of the injury.' " *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, ¶ 35, quoting R.C. 4123.54(A). Based on this principle, we have recognized that "a causal relationship must exist between the employee's industrial injury and the loss that the requested benefit is designed to compensate." *Id.* When

an injured worker's loss of wages is caused by something other than the workplace injury, TTD compensation is not available.

{¶ 25} For this reason, an injured worker is not entitled to TTD compensation when he or she voluntarily abandons employment by quitting, *State ex rel. James v. Wal-Mart Stores, Inc.*, 149 Ohio St.3d 700, 2017-Ohio-1426, 77 N.E.3d 952, ¶ 18, resigning on two weeks' notice, *State ex rel. Bilaver v. Indus. Comm.*, 131 Ohio St.3d 132, 2012-Ohio-26, 961 N.E.2d 675, ¶ 5, retiring, *State ex rel. Corman v. Allied Holdings, Inc.*, 132 Ohio St.3d 202, 2012-Ohio-2579, 970 N.E.2d 929, ¶ 6-7, being incarcerated, *State ex rel. Ashcraft v. Indus. Comm.*, 34 Ohio St.3d 42, 44-45, 517 N.E.2d 533 (1987), or being terminated from employment for violating work rules, *State ex rel. Parraz v. Diamond Crystal Brands, Inc.*, 141 Ohio St.3d 31, 2014-Ohio-4260, 21 N.E.3d 286, ¶ 15-16.

{¶ 26} The causal connection between the workplace injury and the loss of wages is also severed "when work within the physical capabilities of the employee is made available by the employer." R.C. 4123.56(A). If the injured worker declines a good-faith offer of suitable employment, the worker is no longer entitled to TTD compensation. *State ex rel. Pacheco v. Indus. Comm.*, 157 Ohio St.3d 126, 2019-Ohio-2954, 132 N.E.3d 670, ¶ 27. In those circumstances, it is the injured worker's rejection of the employment offer for reasons unrelated to the workplace injury—not the workplace injury itself—that causes the loss of wages.

{¶ 27} However, we have previously described voluntary abandonment and the rejection of a good-faith offer of suitable employment as "mutually exclusive." *State ex rel. Ellis Super Valu, Inc. v. Indus. Comm.*, 115 Ohio St.3d 224, 2007-Ohio-4920, 874 N.E.2d 780, ¶ 12. In *Ellis Super Valu,* we reasoned that "[a]n offer of alternate employment would occur only when a claimant is medically unable to return to the former position of employment. In such a case, a finding of voluntary abandonment could not be sustained, since a claimant cannot voluntarily abandon a position that he or she is medically incapable of performing." *Id.* However, this

statement is no longer good law, as we have recently held that a claimant *can* voluntarily abandon a position even if he or she is medically incapable of performing it. *State ex rel. Klein v. Precision Excavating & Grading Co.*, 155 Ohio St.3d 78, 2018-Ohio-3890, 119 N.E.3d 386, ¶ 2.  The question in these cases is always the same: Did the workplace injury cause the injured worker's continued loss of wages?  The answer in this case is no.

{¶ 28} Moss suffered a workplace injury as a second-shift employee working from 4:00 p.m. to midnight for Ram Plastics, where Ryan had placed Moss as a temporary employee.  She sought TTD compensation from Ryan, her self-insuring employer.  One of Ryan's employees, Pam Plasky, contacted Ram Plastics and learned that it had no positions compatible with Moss's medical restrictions. Plasky then called Moss and offered her a clerical position working directly for Ryan between 8:30 a.m. and 5:00 p.m.  According to Plasky, as a temporary staffing agency, Ryan is open only during business hours.  Moss declined the job offer because she had a "prior obligation to her daughter to take care of her granddaughter that was disabled while her daughter is at work."  Ryan then denied Moss's request for TTD compensation because Moss had rejected a position that was compatible with her medical restrictions.

{¶ 29} Moss challenged the denial of TTD compensation before the commission, asserting that Ryan purposely offered her work that it knew she could not accept because it was on the day shift.  She therefore maintained that she was entitled to TTD compensation because Ryan had not made an offer of suitable employment in good faith.  At a hearing before the district hearing officer ("DHO"), Ryan presented Plasky's testimony that it was open only during daytime business hours and that it had previously provided injured workers with positions at its offices when other suitable employment with its clients was not available.  The DHO credited this testimony, finding that

10

[the] testimony regarding the regular course of business of the temporary staffing agency in such situations is found to be probative. Thus, the offer of employment at the temporary staffing agency's offices, albeit at a different time than the Injured Worker was accustomed to work, is not deemed to have been "consciously crafted" to present the Injured Worker with a position which she could not accept. Accordingly, this offer is deemed to have been made in "good faith," in accordance with the provisions of Ohio Adm. Code 4121-3-32(A)(6).

The DHO acknowledged Moss's statement that Ryan "was aware of her scheduling requirements when she first signed up for work with the temporary staffing agency," but he rejected her argument that Ryan had displayed a lack of good faith in making the job offer, and he denied her request for TTD compensation.

{¶ 30} On review, the staff-hearing officer ("SHO") "specifically [found] that the job offer was made in good faith by the Employer as this was the only position that the Employer had available to accommodate the Injured Worker's physical restrictions." But the SHO went further, explaining that because Moss had refused the job offer in good faith and could not return to her prior position due to medical restrictions, she was entitled to TTD compensation.

{¶ 31} The Tenth District Court of Appeals granted a writ of mandamus compelling the commission to vacate its order and deny TTD compensation. On appeal to this court, the commission's sole argument is that it "does not abuse its discretion in awarding temporary total disability compensation to an injured worker where there is some evidence that the injured worker acted in good faith in declining a light duty job offer from the employer due to pre-existing family obligations at the time of the scheduled shift as provided within the light duty job offer."

**{¶ 32}** But as the majority correctly points out, "nothing in R.C. 4123.56(A) or Ohio Adm.Code 4121-3-32(A)(6) permits an injured worker to receive TTD compensation after refusing a good-faith offer of suitable alternative employment, even if the injured worker exercised good faith in refusing the offer." Majority opinion at ¶ 14. The commission's argument is therefore not well-taken.

**{¶ 33}** But although the DHO and SHO expressly found that Ryan offered Moss suitable employment in good faith, the majority opinion speculates that the DHO and SHO were confused regarding how the absence of "good faith" may be established. The majority opinion states that "the DHO appears to have believed that the commission could find bad faith on Ryan's part only if Ryan consciously crafted a position it knew Moss could not accept." Majority opinion at ¶ 19. It also says that "the SHO clearly believed that Moss should receive TTD compensation— an incorrect result under the statute, if the correct standard for determining good faith had been applied." *Id*. at ¶ 20. But Moss's theory of her case was that Ryan had purposefully offered her the clerical position on the day shift with the intention that she would have to refuse it due to her childcare responsibilities. The DHO and SHO each had to reject that argument to decide, as they did, that Ryan acted in good faith. And whether there are some other bases for finding that Ryan exhibited a lack of good faith is something that has never been an issue in this case. Rather than exhibiting confusion over how an employer's good faith may be established, the SHO's determination reflects the commission's erroneous position in this case that the commission may award TTD compensation if the injured worker in good faith turns down a good-faith offer of employment. That misunderstanding of the law aside, the DHO's and SHO's findings are unambiguous: Ryan offered Moss suitable employment in good faith and she rejected that offer.

**{¶ 34}** No one has argued in this court that the evidence does not support the commission's finding that Ryan acted in good faith. Only the commission appealed the Tenth District's decision, and it has not argued that the evidence is

insufficient to support *its own finding* that Ryan acted in good faith. Rather, it acknowledges that Ryan made the light-duty work available in good faith. Moss did not appeal, and although she filed a brief in this court, she does not dispute that Ryan made a good-faith job offer. She therefore abandoned the argument she made before the commission that Ryan had not given her a good-faith job offer because "[t]he job offer was purposefully offered in a day shift capacity, which she was not going to be able to perform."

{¶ 35} Whether or not Ryan acted in good faith, then, is not properly before this court for review. The sole issue litigated by the parties in this court is whether an employee's good-faith refusal of a good-faith offer of suitable employment preserves entitlement to TTD compensation. However, R.C. 4123.56(A) provides that payment for TTD compensation "shall not be made" for periods "when work within the physical capabilities of the employee is made available by the employer." Therefore, when an employer offers an injured worker suitable employment in good faith and the injured worker refuses it, the causal connection between the injury and loss of wages is broken. And here, it was Moss's daughter's need for Moss to provide childcare during the day that precluded Moss from accepting the job offer. Because her workplace injury did not prevent her from accepting the light-duty position, her refusal to accept it for other reasons, however justifiable, does not maintain the causal connection between the workplace injury and the loss of wages that is required for her to be entitled to TTD compensation.

{¶ 36} The majority today reaches to decide an issue that has not been briefed by the parties in this court. We should not abandon this court's "role of neutral arbiter of matters the parties present," *Greenlaw v. United States*, 554 U.S. 237, 243, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008), by injecting new arguments into this case. As Judge Richard Posner once explained, "we cannot write a party's brief, pronounce ourselves convinced by it, and so rule in the party's favor. That's

SUPREME COURT OF OHIO

not how an adversarial system of adjudication works." *Xue Juan Chen v. Holder*, 737 F.3d 1084, 1085 (7th Cir.2013).

{¶ 37} For these reasons, I would affirm the judgment of the Tenth District Court of Appeals and issue a writ of mandamus to compel the commission to vacate its order and to deny the request for TTD compensation. The majority does not, based on factual issues that the commission—the sole appellant—has not raised and arguments that no one has asserted. I therefore dissent.

DEWINE, J., concurs in the foregoing opinion.

_____

Morrow & Meyer, L.L.C., and Mary E. Ulm, for appellee.

Dave Yost, Attorney General, and Douglas R. Unver, Assistant Attorney General, for appellant.

_____