[Cite as *State ex rel. Papageorgiou v. Avalotis Corp.*, 2025-Ohio-846.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Evangelo Papageorgiou, :

     Relator, :

                           No. 23AP-689

v. :

                     (REGULAR CALENDAR)

Avalotis Corporation et al., :

     Respondents. :

---

D E C I S I O N

Rendered on March 13, 2025

---

**On brief:** *Nager, Romaine & Schneiberg, Co., L.P.A.,*
*Catherine Lietzke,* and *C. Bradley Howenstein,* for relator.

**On brief:** *Pietragallo Gordon Alfano Bosick & Raspanti,*
*LLP,* and *Robert J. D'Anniballe, Jr.,* for respondent Avalotis
Corporation.

**On brief:** *Dave Yost,* Attorney General, and *Cindy Albrecht,*
for respondent Industrial Commission of Ohio.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LELAND, J.

{¶ 1} Relator, Evangelo Papageorgiou, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying his request for temporary total disability ("TTD") compensation and enter an order granting the compensation.

## I. Facts and Procedural History

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. Having independently reviewed the record and the magistrate's decision, we adopt the magistrate's findings of fact as our own.

{¶ 3} Of particular relevance here, the magistrate established the following facts. On May 25, 2018, relator suffered a neck injury while operating a sandblaster in the employ of respondent Avalotis Corporation ("Avalotis"). Relator underwent surgery for the injury that same day at MetroHealth Medical Center in Cleveland. In a return-to-work form dated June 5, 2018, Dr. Jason Young advised relator he could return to light-duty work with no heavy lifting. On June 26, 2018, Dr. John Dunne found relator had been receiving his wages despite sitting idle at work because Avalotis had not made any light-duty work available to relator. In a June 26, 2018 physician's report of work ability, Dr. Dunne indicated relator was capable of sitting for eight hours, walking for two hours, and standing for two hours in a workday.

{¶ 4} On June 28, 2018, Avalotis offered relator a light-duty position that would have paid the same salary as he earned before his injury. This position included the following responsibilities: "[s]orting hardware associated with the rigging removal"; "[g]eneral area housekeeping"; "[c]rane/[a]erial lift spotter"; "[a]ssist with traffic control"; "[p]aint log recorder"; and "[g]eneral inventory management." (June 25, 2018 Letter.) In a letter to relator's counsel dated July 2, 2018, Dr. Dunne opined that the light-duty job offer from Avalotis was "within [relator's] current functional capabilities," so long as he is not required to look overhead for long periods of time or lift more than 20 pounds. A project manager at Avalotis, Rino Bigante, claimed he explained the details of the light-duty job offer to relator on June 28, 2018 and informed him the new role would commence the following day. In Bigante's telling, relator took the employment offer letter and left without a word. Relator did not show up for work the next day, June 29, 2018, and Avalotis interpreted his absence as a voluntary abandonment of his position.

{¶ 5} On September 21, 2018, relator requested TTD compensation from May 26 to October 30, 2018, with such compensation to continue upon further proof of disability.

On February 12, 2019, the commission's staff hearing officer ("SHO") denied relator's request for TTD compensation, finding relator did in fact voluntarily abandon his employment once Avalotis offered a light-duty position that relator's treating physician indicated relator could perform. On March 5, 2019, the commission refused relator's appeal of the February 12, 2019 SHO order. On November 14, 2023, relator filed the present complaint for a writ of mandamus.

{¶ 6} The magistrate recommended this court grant a limited writ of mandamus ordering the commission to issue an amended order setting forth sufficient reasoning to support its determination.

## II. Objections

{¶ 7} Respondents, Avalotis and the commission, each filed two objections to the magistrate's decision that raise essentially identical arguments, and our analysis will thus address respondents' objections together:

> [I.] The magistrate erred by neglecting to consider that TTD compensation was denied pursuant to evidence that [relator's] treating physician, Dr. John L. Dunne, D.O., found [relator] was capable of returning to available suitable employment.
>
> [II.] The magistrate erred by improperly faulting the commission for failing to address whether [relator] abandoned the workforce.

## III. Analysis

{¶ 8} In ruling on objections to a magistrate's decision, this court conducts an independent review to ensure the magistrate "properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). We "may adopt or reject a magistrate's decision in whole or in part, with or without modification." Civ.R. 53(D)(4)(b). In the present case, respondents object only to the magistrate's conclusions of law.

{¶ 9} This court will issue a writ of mandamus to remedy a commission action if a relator establishes all of the following (1) relator has a clear legal right to the requested relief, (2) the commission has a clear legal duty to provide such relief, and (3) relator lacks an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). In order for a writ to issue, a relator "must demonstrate

that the commission abused its discretion and, 'in this context, abuse of discretion has been repeatedly defined as a showing that the commission's decision was rendered without some evidence to support it.' " *State ex rel. Ottinger v. B&B Wrecking & Excavating*, *Inc.*, 2023-Ohio-1758, ¶ 13 (10th Dist.), quoting *State ex rel. Burley v. Coil Packaging*, *Inc.*, 31 Ohio St.3d 18, 20 (1987); *see State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 2018-Ohio-2122, ¶ 25.

{¶ 10} In relevant part, R.C. 4123.56(A) states that payments of TTD compensation "shall not be made for the period . . . when work within the physical capabilities of the employee is made available by the employer or another employer." This statute incentivizes previously injured workers to return to the workforce by providing "that a claimant who was offered a job within his or her physical capacities could not receive temporary total disability compensation if he or she refused that job." *State ex rel. Ellis Super Valu*, *Inc. v. Indus. Comm.*, 2007-Ohio-4920, ¶ 11.

{¶ 11} Here, Avalotis offered relator a light-duty position that relator's treating physician found to be within his capabilities. Relator nevertheless refused the job offer by failing to show up for work. As discussed above, the commission abuses its discretion where it renders a decision without any evidence to support it. *See Ottinger* at ¶ 13. In this case, the commission relied on the letter sent by relator's treating physician, Dr. Dunne, to determine that the light-duty job offer from Avalotis was within relator's physical limitations. This letter constitutes some evidence upon which the commission could properly rely in denying relator's request for TTD compensation pursuant to R.C. 4123.56(A). Because there was some evidence supporting the commission's decision, we conclude the commission did not abuse its discretion. Accordingly, we sustain respondents' first joint objection to the magistrate's decision.

{¶ 12} Having sustained the first objection, we decline to grant relator's petition for a writ of mandamus. Accordingly, we render as moot the second joint objection.

## IV. Conclusion

{¶ 13} Upon review of the magistrate's decision, an independent review of the record, and due consideration of respondents' objections, we find the magistrate has properly determined the facts but in part misapplied the law. We therefore sustain the first

objection of each respondent and render as moot the second objection of each respondent. Accordingly, we dismiss the action.

*First joint objection sustained*;
*second joint objection rendered moot*;
*action dismissed.*

BEATTY BLUNT and BOGGS, JJ., concur.

_____

[Cite as *State ex rel. Papageorgiou v. Avalotis Corp.*, 2025-Ohio-846.]

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Evangelo Papageorgiou, | : | |
| Relator, | : | |
| v. | : | No. 23AP-689 |
| | : | (REGULAR CALENDAR) |
| Avalotis Corporation et al., | : | |
| Respondents. | : | |
| | : | |

MAGISTRATE'S DECISION

Rendered on November 13, 2024

*Nager*, *Romaine & Schneiberg*, *Co.*, *L.P.A.*, *Catherine Lietzke*, and *C. Bradley Howenstein*, for relator.

*Pietragallo Gordon Alfano Bosick & Raspanti, LLP,* and *Robert J. D'Anniballe, Jr.,* for respondent Avalotis Corporation.

*Dave Yost,* Attorney General, and *Cindy Albrecht*, for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 14} In 2019, relator Evangelo Papageorgiou sought and was denied temporary total disability ("TTD") compensation by respondent Industrial Commission of Ohio ("commission"). Papageorgiou now requests the issuance of a writ of mandamus ordering the commission to reverse this decision. For the following reasons, the magistrate

recommends issuing a limited writ of mandamus returning this matter to the commission to issue an amended order.

## I. Findings of Fact

{¶ 15} 1. On May 25, 2018, Papageorgiou was working for respondent Avalotis Corporation ("Avalotis") when a sandblaster caused a high-pressure injury to his neck. On the same day, surgery was performed on Papageorgiou at the MetroHealth Medical Center in Cleveland, Ohio.

{¶ 16} 2. In a MetroHealth Medical Center return-to-work form dated June 5, 2018, Jason Young, D.D.S., advised Papageorgiou that he was permitted to return to work with the restriction of "light duty [] work" and "no heavy lifting." (Stip. at 72.)

{¶ 17} 3. Avalotis certified Papageorgiou's workers' compensation claim in a letter received by the Bureau of Workers' Compensation ("BWC") on June 14, 2018. Avalotis continued to pay Papageorgiou wages from the date of injury through June 28, 2018.

{¶ 18} 4. John L. Dunne, D.O., evaluated Papageorgiou on June 26, 2018. Dr. Dunne noted that Papageorgiou was previously "recommended for restricted duties, nothing heavy physically demanding as he was complaining of pressure in the head, headaches, vision disturbances, and dizziness when he would look up." (Stip. at 45.) Dr. Dunne indicated that Papageorgiou "has been receiving his wages and just sitting doing nothing on the job site as everything is physically demanding, no very light duty available for him." *Id.*

{¶ 19} 5. Dr. Dunne completed a series of physician's report of work ability ("MEDCO-14") forms beginning on June 26, 2018. In the June 26, 2018 MEDCO-14, which was only partially completed, Dr. Dunne listed various restrictions on Papageorgiou's work ability. Specifically, Dr. Dunne indicated that Papageorgiou was not able to bend, squat/kneel, twist/turn, or climb. Papageorgiou was able to occasionally reach above shoulder and frequently type/keyboard, and work with cold and hot substances. Papageorgiou was able to occasionally lift or carry up to 10 pounds and frequently push or pull up to 25 pounds. In an eight-hour workday, Dr. Dunne indicated that Papageorgiou was able to sit for eight hours, walk for two hours, and stand for two hours.

{¶ 20} 6. Papageorgiou indicated that Dr. Dunne would be serving as his physician of record in a C-23 notice to change physician of record form signed by Papageorgiou on June 26, 2018.

{¶ 21} 7. On June 28, 2018, Avalotis offered Papageorgiou a "light duty position" in a letter that was dated June 25, 2018. (Stip. at 5.) The letter contained the following description of the job offer:

> In accordance with your recent medical visit Avalotis Corporation is able to accommodate your restriction of return to work with "No Heavy Lifting" immediately. The position is at the Cleveland Inner Belt Project and you will be paid your pre injury wage.
>
> The following duties are available that meet your restrictions and dependent upon our needs you will be performing either of these:
>
> Sorting hardware associated with the rigging removal.
> General area housekeeping
> Crane/Aerial lift spotter
> Assist with traffic control
> Paint log recorder
> General inventory management
>
> You will report directly to Rino Bigante, our Project Manager. Upon receipt of this letter, please contact Mr. Bigante to make arrangements to begin work.

(Stip. at 5.)

{¶ 22} 8. In a letter to Papageorgiou's counsel dated July 2, 2018, Dr. Dunne stated as follows: "I reviewed the light duty job offer from the employer, and I would agree that he is able to perform duties on the ground that do not involve working or looking overhead for long periods and an approximately 20 pound weight restriction are within his current functional capabilities." (Stip. at 48.)

{¶ 23} 9. In a letter dated July 16, 2018, Rino Bigante, a project manager with Avalotis, summarized his interaction with Papageorgiou regarding Avalotis's job offer:

> I hand delivered the employment offer letter to Mr. Papageorgiou on [June 28, 2018], at the time he stopped in to pick up his paycheck. I handed him the letter and explained briefly the details of the employment offer. I indicated that he should arrive onsite on [June 29, 2018] and be ready to work in accordance with the employment offer letter. Mr. Papageorgiou took the letter and did not say anything further.

> I have not had any further contact with him since [June 28, 2018].

(Stip. at 58.)

{¶ 24} 10. Gerard A. Masters, a safety manager with Avalotis, addressed Papageorgiou's failure to appear to work in a letter dated July 21, 2018 as follows:

> On June 28, 2018, the Avalotis Corporation Project Manager, Rino Bigante handed a letter to you offering you a position on the project in accordance with the medical restrictions that are in place. A copy of this letter is attached.

> You were to report to work the next day on June 29, 2018. Since you have not returned to work and work is available within your restrictions, this is being deemed voluntary abandonment of your position with Avalotis Corporation as of June 29, 2018.

(Stip. at 4.)

{¶ 25} 11. Dr. Dunne examined Papageorgiou on July 24, 2018. In the office note, Dr. Dunne indicated that Papageorgiou "had just a few sessions of therapy, and he is already making progress with the tightness in his neck range of motion and extension." (Stip. at 43.) Dr. Dunne did not list any restrictions on Papageorgiou's work ability in the office note.

{¶ 26} 12. Dr. Dunne indicated that Papageorgiou was not able to return to the full duties of the job held on the date of injury in a MEDCO-14 dated July 24, 2018. No restrictions were listed in the MEDCO-14.

{¶ 27} 13. Papageorgiou was next examined by Dr. Dunne on August 7, 2018. Dr. Dunne indicated in the treatment note for that visit that Papageorgiou was "making functional improvement but not yet able to return to work as he can't look up left or right yet which are necessary in his job." (Stip. at 42.)

{¶ 28} 14. Dr. Dunne again indicated Papageorgiou was not able to return to the full duties of the job held on the date of injury in a MEDCO-14 dated August 7, 2018. Dr. Dunne listed restrictions on Papageorgiou's work ability which differed from those listed in the June 26, 2018 MEDCO-14. Specifically, Dr. Dunne indicated Papageorgiou was able to frequently bend, squat/kneel, type/keyboard, and work with cold and hot substances. Papageorgiou was not able to twist/turn, climb, or reach above the shoulder. Papageorgiou could occasionally lift up to 10 pounds and push or pull up to 25 pounds.

Dr. Dunne also indicated restrictions on the number of hours per day Papageorgiou could work overall and in certain positions.

{¶ 29} 15. In an email dated August 10, 2018, Bigante again addressed Avalotis's job offer to Papageorgiou as follows:

> On approximately June 20th, * * * Papageorgiou came into the office to pick up his paycheck. I spoke with [Papageorgiou] regarding light duty work that he could perform within his restrictions. In my opinion, [Papageorgiou] was not enthusiastic with the list of items I mentioned to him (some of those mentioned items are shown on the June 25, 2018 letter). [Papageorgiou] indicated that he was not concerned about receiving a paycheck and he would feel embarrassed performing these tasks.
>
> On June 28th, [Papageorgiou] came into the office to pick up his paycheck. At the time I gave him his paycheck, I also handed him the letter dated June 25, 2018, about the light duty position. [Papageorgiou] took the letter from my hand at which time I told him that I expect him to begin work on June 29. He did not say anything further and left the office trailer.

(Stip. at 59.)

{¶ 30} 16. Papageorgiou filed a request for temporary total compensation ("C-84") form dated September 17, 2018. Papageorgiou indicated that he last worked anywhere on May 25, 2018, the date of his injury. Papageorgiou indicated he was being prevented from returning to work due to "pain in neck and head." (Stip. at 17.) Papageorgiou indicated he did not know whether he had a job to which he could return. In a C-86 motion filed September 21, 2018, Papageorgiou, through counsel, requested payment of TTD compensation from May 26 to October 30, 2018 and to continue upon submission of further proof of disability. The motion was supported by C-84 request and Dr. Dunne's June 26, July 24, and August 7, 2018 MEDCO-14 forms.

{¶ 31} 17. Avalotis opposed Papageorgiou's request for TTD compensation on the basis that Papageorgiou "was terminated for refusal of light duty he was released to and [employer of record] could accommodate." (Stip. at 61.)

{¶ 32} 18. On November 5, 2018, the BWC recommended that Papageorgiou's request for TTD compensation be denied and referred the matter to the commission.

{¶ 33} 19. A commission district hearing officer ("DHO") conducted a hearing on Papageorgiou's request for TTD compensation on December 12, 2018. In an order issued on December 18, 2018, the DHO additionally allowed the claim for the conditions of cervical sprain, cervical strain, and head contusion. The DHO disallowed the claim for the conditions of left knee sprain and left knee strain. With regard to the request for TTD compensation, the DHO noted that counsel for Papageorgiou indicated at the hearing that Papageorgiou "did receive wages in lieu of [TTD] through [June 28, 2018]." (Stip. at 15.) The DHO made the following findings:

> At the hearing, counsel for [Avalotis] argued that [TTD] should be denied as [Papageorgiou] had voluntarily abandoned his employment in not responding to [Avalotis's] light-duty job offer that was handed to him on [June 28, 2018]. However, the [DHO] notes that the letter documenting the light-duty offer, dated [June 25, 2018], had only listed the fact that [Avalotis] could accommodate the "no heavy lifting" restriction. In fact, the MEDCO-14 form on file from Dr. Dunne, dated [June 26, 2018], listed a multitude of restrictions, including lifting, bending, squatting, kneeling, twisting, turning, climbing and reaching. The [DHO] finds that [Avalotis's] light-duty job offer did not address all of [Papageorgiou's] restrictions at the time that he was handed the letter on [June 28, 2018], and that [Papageorgiou's] failure to accept this job offer did not constitute an abandonment of employment.

(Stip. at 15.) Noting that there was no contrary medical evidence in the record, the DHO relied on Dr. Dunne's MEDCO-14 forms and Dr. Dunne's treatment notes to grant TTD compensation from June 29, 2018 through the date of the hearing and to continue upon submission of appropriate medical proof.

{¶ 34} 20. Avalotis appealed the December 18, 2018 DHO order.

{¶ 35} 21. On February 4, 2019, a commission staff hearing officer ("SHO") held a hearing on the appeal. The SHO issued an order on February 12, 2019 that vacated the DHO's December 18, 2018 order. The SHO allowed and disallowed the claim for the same conditions as specified in the DHO's order. With regard to the request for TTD compensation, the SHO noted that Papageorgiou received wages in lieu of TTD compensation through June 28, 2018. The SHO also included factual findings regarding Avalotis's job offer. Among other findings, the SHO found that "[t]he light duty job offer

was dated [June 25, 2018] and indicated specific jobs that [Papageorgiou] could perform given restrictions on lifting." (Stip. at 12.) The SHO denied Papageorgiou's request for TTD compensation, stating:

> The evidence as set out does indicate that [Papageorgiou] did voluntarily abandon his employment as a light duty position was offered to [Papageorgiou] which the treating physician did sign off on and indicate that he would be able to perform. [Papageorgiou] did not report to work to attempt to work in a light duty position after being given the light duty job offer. For the following reasons, the [SHO] finds that there is a voluntary abandonment of employment and that the requested [TTD] compensation after [June 28, 2018] is denied.

(Stip. at 12.) Although no other reasons were provided following this statement, the SHO did summarily note that "[a]ll the evidence was reviewed and considered." *Id.* (Stip. at 12.)

{¶ 36} 22. Papageorgiou appealed the February 12, 2019 SHO order to the commission on February 15, 2019.

{¶ 37} 23. On March 5, 2019, the commission, through an SHO, refused Papageorgiou's appeal of the February 12, 2019 SHO order.

{¶ 38} 24. Papageorgiou commenced this mandamus action with the filing of his complaint on November 14, 2023.

## II. Discussion and Conclusions of Law

{¶ 39} Papageorgiou asserts entitlement to a writ of mandamus ordering the commission to grant him TTD compensation.

## A. Requirements for Mandamus

{¶ 40} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, Papageorgiou must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A writ of mandamus will issue where "there is a legal basis to compel the commission to perform its clear legal duty under the law, including when the commission has abused its discretion in carrying out its duties." *State*

*ex rel. Belle Tire Distribs. v. Indus. Comm.*, 154 Ohio St.3d 488, 2018-Ohio-2122, ¶ 25. "Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion." *State ex rel. Mobley v. Indus. Comm. of Ohio*, 78 Ohio St.3d 579, 584 (1997). Additionally, a writ of mandamus " 'may issue against the Industrial Commission if the commission has incorrectly interpreted Ohio law.' " *State ex rel. Cassens Corp. v. Indus. Comm. of Ohio*, 174 Ohio St.3d 414, 2024-Ohio-526, ¶ 10, quoting *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 65 (1975).

**B. Temporary Total Disability and Wage Loss Compensation**

{¶ 41} TTD compensation, a statutorily prescribed workers' compensation benefit, is governed by R.C. 4123.56. The purpose of TTD compensation is to compensate a worker for the loss of earnings incurred while they heal from an injury and are unable to return to work. *Ewell v. Montgomery Cty. Court of Common Pleas*, 10th Dist. No. 13AP-1078, 2014-Ohio-3047, ¶ 13; *State ex rel. Baker v. Indus. Comm.*, 89 Ohio St.3d 376, 380 (2000). R.C. 4123.56(A) contains the following qualifications for payment of TTD compensation:

> [P]ayment [for TTD] shall not be made for the period when any employee has returned to work, when an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment, when work within the physical capabilities of the employee is made available by the employer or another employer, or when the employee has reached the maximum medical improvement.

*See Ewell* at ¶ 13. Thus, "[a]s a further incentive to return to the work force," under R.C. 4123.56(A), "a claimant who was offered a job within [their] physical capacities could not receive temporary total disability compensation if [they] refused that job." *State ex rel. Ellis Super Valu, Inc. v. Indus. Comm.*, 115 Ohio St.3d 224, 2007-Ohio-4920, ¶ 11.

{¶ 42} R.C. 4123.56(A) "must be read in pari materia with the Ohio Administrative Code provision that supplements it." *Id.* at ¶ 13. *See State ex rel. Ryan Alternative Staffing, Inc. v. Moss*, 166 Ohio St.3d 467, 2021-Ohio-3539, ¶ 8 (stating that "R.C. 4123.56(A) must be read in pari materia with Ohio Adm.Code 4121-3-32(A)(6)");

*State ex rel. Pacheco v. Indus. Comm.*, 157 Ohio St.3d 126, 2019-Ohio-2954, ¶ 19. A "job offer" in the context of R.C. 4123.56(A) is addressed by the Ohio Administrative Code as follows:

> "Job offer" means a proposal, made in good faith, of suitable employment within a reasonable proximity of the injured worker's residence. If the injured worker refuses an oral job offer and the employer intends to initiate proceedings to terminate temporary total disability compensation, the employer must give the injured worker a written job offer at least forty-eight hours prior to initiating proceedings. The written job offer shall identify the position offered and shall include a description of the duties required of the position and clearly specify the physical demands of the job. If the employer files a motion with the industrial commission to terminate payment of compensation, a copy of the written offer must accompany the employer's initial filing.

Ohio Adm.Code 4121-3-32(A)(6). "Suitable employment" is defined as "work which is within the employee's physical capabilities." Ohio Adm.Code 4121-3-32(A)(3). R.C. 4123.56(A) "grants the commission no discretion to award TTD compensation if the employer makes an offer complying with R.C. 4123.56(A) and Ohio Adm.Code 4121-3-32(A)(6)." *Ryan* at ¶ 10.

**C. Analysis**

{¶ 43} Papageorgiou argues the commission abused its discretion by denying his request for TTD compensation for several reasons. First, Papageorgiou argues the commission erred in finding he voluntarily abandoned his employment.

{¶ 44} As the Supreme Court of Ohio has made clear, voluntary abandonment of employment is a distinct defense to the obligation to pay TTD compensation from the defense of refusal of an offer of suitable alternative employment. *See Ryan*, 2021-Ohio-3539, at ¶ 12; *Pacheco*, 2019-Ohio-2954, at ¶ 24; *Ellis*, 2007-Ohio-4920, at ¶ 6 (stating that "both defenses" of voluntary abandonment and refusal of an offer of suitable alternative employment "affect a claimant's eligibility for temporary total disability compensation, but they derive from different compensatory theories and involve distinct analyses"). Analysis of voluntary abandonment focuses on whether the "circumstances demonstrate a voluntary abandonment of the *workforce*—permanent or temporary—such that the injured worker's wage loss is not the result of the work injury." (Emphasis

added.) *State ex rel. Ohio State Univ. v. Pratt*, 169 Ohio St.3d 527, 2022-Ohio-4111, ¶ 24.[1] On the other hand, with regard to an offer of suitable alternative employment, there is no question regarding "why the claimant has not returned to his former position of employment, because the answer is inherent in the mere fact of a job offer." *Ellis* at ¶ 9. This is because "[a]n offer of alternate employment would occur only when a claimant is medically unable to return to the former position of employment." *Id.* at ¶ 12. Thus, "the relevant inquiry in this situation is why the claimant has rejected an offer to ameliorate the amount of wages lost," which can "involve considerations of, for example, employment suitability, the legitimacy of the job offer, or whether the position was offered in good faith." *Ellis*, 2007-Ohio-4920, at ¶ 9. *See Pacheco* at ¶ 24.

**{¶ 45}** In its brief in this matter, the commission recognizes that voluntary abandonment of employment and refusal of suitable alternative employment are separate and distinct defenses. Based on this, the commission contends that "Papageorgiou's argument that he is entitled to TTD compensation because he did not abandon the entire workforce is inapplicable and without merit." (Commission's Brief at 14.) Yet, the commission, through its SHO, found that Pagageorgiou's actions constituted a "voluntary abandonment of employment" and denied TTD compensation on this basis. (Stip. at 12.) Notably, the SHO made no findings regarding whether the circumstances demonstrated Papageorgiou voluntarily abandoned the *workforce*. Rather, the SHO's analysis focused on whether Papageorgiou refused Avalotis's offer of alternative light-duty employment. However, a voluntary abandonment finding is separate and distinct from a finding that a party unjustifiably refused an offer of suitable alternative employment. *Ryan* at ¶ 12.

**{¶ 46}** Moreover, although the SHO's analysis focused on the offer of alternative employment, the SHO did not directly state that the defense of refusal of suitable alternative employment was proven. *See Ellis*, 2007-Ohio-4920, at ¶ 12 (stating that "a finding that a claimant has unjustifiably refused an offer of suitable alternate employment

---

[1] "[T]his court recently noted 'the Ohio legislature enacted 2020 Ohio Am.Sub.H.B. No. 81 to, in part * * * supersede judicial decisions applying the voluntary abandonment doctrine' by the 'addition of R.C. 4123.56(F)' as it applies to TTD compensation." *State ex rel. Hineman v. Indus. Comm.*, 10th Dist. No. 22AP-149, 2024-Ohio-1136, ¶ 10, quoting *State ex rel. Autozone Stores, Inc. v. Indus. Comm.*, 10th Dist. No. 21AP-294, 2023-Ohio-633, ¶ 14. "The 2020 amendment adding R.C. 4123.56(F) 'appl[ies] to claims pending on or arising after the effective date,' which is September 15, 2020." *Autozone* at ¶ 8, fn. 1, quoting Section 3 of 2020 Am.Sub.H.B. No. 81.

does not translate into a finding that the claimant voluntarily abandoned the former position of employment"). The SHO also did not make all of the findings under Ohio Adm.Code 4121-3-32(A)(6), including whether the job offer was made in good faith—a requirement that will be discussed further below. Thus, either the denial was based on (1) voluntary abandonment, a conclusion not supported by the SHO's factual findings in addition to being disclaimed by the commission in this action, or (2) a determination that Papageorgiou unjustifiably refused suitable alternative employment, a finding the SHO never explicitly made or supported by making findings related to the requirements in Ohio Adm.Code 4121-3-32(A)(6), including the requirement that the job offer was made in good faith. Regardless, the lack of clarity in the SHO's order, especially when considered with the commission's position in this action, presents a problem for reviewing the denial of Papageorgiou's request for TTD compensation.

{¶ 47} Papageorgiou also contends the commission abused its discretion in finding that an employee is required to accept a job offer that was not rendered in good faith. Ohio Adm.Code 4121-3-32(A)(6) requires that an offer of alternative employment be made in good faith. *See Ellis* at ¶ 13. The DHO, in the December 18, 2018 order granting Papageorgiou's request for TTD compensation, found that Avalotis's job offer did not address all of Papageorgiou's restrictions at the time that he was handed the letter. *See generally State ex rel. Coxson v. Dairy Mart Stores of Ohio, Inc.*, 90 Ohio St.3d 428, 433 (2000) (stating that "if a job offer is to be sufficient to stop [TTD compensation], it must be clear that the job is indeed within claimant's restrictions"). Though it is possible that the DHO considered the lack of clarity in the job offer regarding whether the job offer was in fact made in good faith, it was not an explicit finding on that question. This, however, brings forward an important point—neither the DHO nor the SHO directly made a finding regarding whether Avalotis's job offer was made in good faith.

{¶ 48} The Supreme Court of Ohio has held that "[t]he existence of good faith is a factual determination that *must be made* by the commission in the first instance." (Emphasis added.) *Pacheco*, 2019-Ohio-2954, at ¶ 27. *See Ellis* at ¶ 13 (stating that "[w]hether [the claimant] exercised good faith in refusing the job offer does not answer whether [the employer] exercised good faith in extending it, which must be addressed"). Although the SHO arguably found that the alternative employment was suitable based on

the July 2, 2018 letter of Dr. Dunne, the SHO did not address whether the employment offer was made in good faith. It is notable that the issue of whether the job offer was sufficiently detailed was previously addressed by the DHO, but not by the SHO. Rather, the SHO found that the job offer "indicated specific jobs that [Papageorgiou] could perform given restrictions on *lifting*." (Emphasis added.) (Stip. at 12.) The June 5, 2018 return-to-work form contained a restriction on "no heavy lifting." (Stip. at 72.) However, at the time Avalotis made the job offer to Papageorgiou on June 28, 2018, a number of other restrictions had been put in place through Dr. Dunne's June 26, 2018 MEDCO-14. Additionally, according to Bigante, Papageorgiou mentioned that "he would feel embarrassed performing [the] tasks" listed in the offer of alternative employment. (Stip. at 59.) *See Pacheco* at ¶ 15. Ultimately, the SHO's order does not reflect any specific consideration of or finding regarding whether the offer was made in good faith. Regardless, because the SHO's order was based on voluntary abandonment and did not contain a specific finding regarding whether the denial of TTD compensation was based on an unjustified refusal of an offer of suitable employment, it is not possible to determine from the text of the SHO's order whether the denial of TTD compensation was in error.

{¶ 49} "The commission speaks only through its final actions, i.e., its orders." *State ex rel. Yellow Freight Sys. v. Indus. Comm. of Ohio*, 71 Ohio St.3d 139, 142 (1994). "Consistent with this tenet, evidentiary review is limited to the evidence and reasoning identified *in* the order." (Emphasis in original.) *Id.* " '*All* matters affecting the rights and obligations of a claimant or employer merit an explanation sufficient to inform the parties and potentially a reviewing court of the basis for the commission's decision." (Emphasis in original.) *State ex rel. Penske Truck Leasing Co., L.P. v. Indus. Comm.*, 153 Ohio St.3d 133, 2018-Ohio-2153, ¶ 12, quoting *Yellow Freight* at 142. The SHO's order in this matter does not include sufficient findings to support the determination. The SHO's order (1) conflates the defenses of voluntary abandonment and the refusal of an offer of suitable alternative employment, and (2) fails to contain sufficient findings to support its determination, including, if applicable, findings under Ohio Adm.Code 4121-3-32(A)(6). Therefore, in order to permit meaningful review, the magistrate finds it is appropriate to issue a limited writ of mandamus remanding this matter to the commission to issue an amended order containing sufficient findings in support of its determination. *See Ellis*,

2007-Ohio-4920, at ¶ 14. As a result, the magistrate finds it is premature to address relator's argument regarding whether Dr. Dunne's July 2, 2018 letter was some evidence upon which the commission could rely in making its determination.

**D. Conclusion**

{¶ 50} Accordingly, it is the decision and recommendation of the magistrate that this court should issue a limited writ of mandamus ordering the commission to consider the claim and issue an amended order setting forth sufficient reasoning to support its determination.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.